ERNST A. KOTTER

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Mt. Vernon June 19, 1894.*

1. INDICTMENT—*charging distinct offenses in one indictment.* In cases of felony, where two or more distinct offenses are charged in the same indictment, it may be quashed, or the prosecutor compelled to elect on which charge he will proceed. But such election will not be required where several counts are introduced solely for the purpose of meeting the evidence as it may transpire, the charges being substantially for the same offense.

2. There can be only one transaction embraced in a single indictment for felony, and the only mode of objecting to a joinder of offenses, in case of felony, is by an application to the court to quash the indictment before plea, or to compel the prosecutor to elect which charge he will try.

3. The defendant moved to quash an indictment charging him with the forgery of three receipts of three different persons, but did not make any formal motion to compel the prosecutor to elect for which forgery he would prosecute, which the court overruled: *Held,* that the court erred in overruling the motion to quash.

4. CRIMINAL LAW—FORGERY—*intent to damage and defraud.* On the trial of one for the forgery of receipts, the court, on behalf of the People, instructed the jury, that while it was necessary that the defendant should have forged the receipts with the intent to damage and defraud the persons whose names were signed thereto, yet if they found that the defendant forged the receipts, or either of them, then the law would presume that defendant intended to damage and defraud such persons: *Held,* that it was error to give the instruction.

5. On the trial of one for the forgery of three receipts for fees due from him to his witnesses, where it was claimed that the witnesses had agreed to give him their fees, the court instructed the jury as follows: "Even though you may believe that all three of the parties (witnesses) mentioned in the indictment did agree to give their witness fees to the defendant, still this would not authorize the defendant to sign and forge their names, or either of them, as charged; * * * and if you find, beyond a reasonable doubt, that the defendant did forge the names of the said parties, or either of them, as charged, you should find the defendant guilty:" *Held,* that the instruction was erroneous.

---

---

6. Where a party, acting under the honest belief that certain witnesses have given him their fees due from him, signs the names of such witnesses to a receipt written on a fee bill, and believes that he has the right to sign their names, and has no intention to defraud such witnesses, he will not be guilty of forgery.

7. SAME—*rebutting presumption of intent to defraud.* While an intent to damage and defraud is essential to the crime of forgery, such intent is not an irrebuttable presumption of law, but is an open question of fact for a jury, to be determined from the facts and circumstances shown by the evidence. The presumption of an intent to defraud, from the signing of the name of another, may be overcome by the other circumstances of the case.

WRIT OF ERROR to the Circuit Court of Massac county; the Hon. A. K. VICKERS, Judge, presiding.

Mr. ROBERT W. MCCARTNEY, for the plaintiff in error:

It was the duty of the court, on motion, to quash the indictment, or to require the State's attorney to elect on which count he would prosecute. 1 Wharton on Am. Crim. Law, sec. 427; 1 Bishop on Crim. Proc. secs. 455, 459; *Chambers* v. *People,* 105 Ill. 409; *Sullivan* v. *People,* 114 id. 24; 29 N. H. 184; 5 S. & R. 591; 10 Cush. 530.

Mr. D. W. HELM, for the People:

A number of counts in an indictment may charge different crimes which are of the same nature. *Parker* v. *People,* 97 Ill. 33.

It is proper to charge in one indictment counts for a burglary and counts charging receiving stolen property; also, to charge in one count of an indictment forgery, and in another, passing a forged instrument. *Bennett* v. *People,* 96 Ill. 602; *Lyons* v. *People,* 68 id. 271; *Tobin* v. *People,* 104 id. 565.

The prosecutor will not be compelled to elect, even on motion of the defendant, where the several charges in the indictment relate to the same transaction, and the same judgment can be rendered, or where the different counts state the same charge in different ways, to meet the various phases of the

evidence, to prevent a variance in the pleading and proof, or where the greater offense includes the lesser. *West* v. *People*, 137 Ill. 190; *Thompson* v. *People*, 125 id. 256; *Herman* v. *People*, 131 id. 594.

The remedy when the indictment charges separate and distinct offenses is not by motion to quash, but by requiring the prosecuting attorney to elect. *Myers* v. *State*, 4 Ohio C. C. 570; *Thompson* v. *People*, 125 Ill. 256; Moore on Crim. Law, secs. 799, 800.

And especially will the judgment not be arrested where the jury have specified in their verdict the count upon which the defendant was found guilty. *United States* v. *Stetson*, 3 W. & M. 164.

Mr. M. T. MOLONEY, Attorney General, Mr. T. J. SCOFIELD, and Mr. M. L. NEWELL, also for the People.

Mr. JUSTICE BAKER delivered the opinion of the Court:

Ernst A. Kotter, the plaintiff in error, was indicted, tried and convicted in the Massac circuit court for the crime of forgery, and sentenced to the penitentiary for the term of one year. He brings the case here by writ of error.

It seems Kotter is a farmer, and was appointed by the county board as pound-master in the precinct in which he lives, to enforce the Stock law. He was probably too zealous in the performance of his duties,—at all events, one William Korte replevied quite a number of cattle and sheep out of his hands, and upon the trial in the Massac circuit court Korte had verdict and judgment against Kotter for the property, and judgment against him for costs. The seven or more witnesses for Kotter sympathized with him in his misfortune, and after the trial, all, or most all, of them met Kotter at Pergande's saloon, and agreed to give him their witness fees, and offered to sign receipts. Afterwards the deputy sheriff, Evers, called on plaintiff in error with the execution for costs,

plaintiff's fee bill and defendant's fee bill, and was informed by plaintiff in error that his witnesses had agreed to give him their costs, and the deputy having been informed by one or more of said witnesses that such was the fact, handed the "defendant's fee bill" to Kotter, with directions to get them to severally receipt on the fee bill for the witness fees due to them, respectively, and then return the fee bill to him. The fee bill, as handed to Kotter, read thus as to each witness named therein: "Henry Brinker, $2.00," the name of and amount due each witness following in order, the only difference being that as to some witnesses the amount stated was $2.00, as to others $1.90 and as to others $1.60. When the fee bill was returned to the deputy sheriff there was written after each name and amount, and in the same line, respectively, with that in which was specified the name of each witness and the amount due him, the additional words, "Received my pay," followed by the name of the witness whose name occurred at the beginning of that line. For example, the first line under the printed caption "Names of witnesses," was as follows: "Henry Brinker, $2.00.—Rec'vd my pay—Henry Brinker." And as to each of the other witnesses followed, in regular order, a like line.

The indictment against plaintiff in error contained three counts for forgery: the first count for forging the receipt for the fees due Henry Brinker, the second for forging the receipt for the fees due Ed Seibold, and the third for forging the receipt for the fees due George Kruger. Plaintiff in error made a motion to quash the indictment, which was overruled, and an exception taken. He was then tried before a jury upon a plea of not guilty, and the jury returned a verdict finding him not guilty upon the second and third counts and finding him guilty on the first count, and fixing his term of imprisonment in the penitentiary at one year. Motions for a new trial and in arrest of judgment were regularly and consecutively made by plaintiff in error, but were overruled by the court and ex-

ceptions duly taken, and he was then sentenced upon the verdict to imprisonment in the penitentiary for the term of one year.

Plaintiff in error insists that the trial court erred in overruling the motion to quash the indictment, since such action required him to plead to and go to jail upon three separate and distinct felonies at one and the same time. In 1 Bishop on Criminal Procedure (sec. 449) it is said: "There can be only one transaction embraced in a single indictment for felony." And in section 425 it is said: "The only mode of objecting to a joinder of such offenses, in case of felony, is by an application to the court to quash the indictment before plea, or to compel the prosecutor to elect which charge he will try in a subsequent stage of the proceedings." And in section 455 it is said: "One mode of enforcing what is equivalent to an election is to quash the indictment before trial, when it appears to the judge that offenses have been unduly joined, and that the prisoner will be thereby prejudiced in his rights." In 1 Wharton on American Criminal Law (sec. 416) it is said: "In cases of felony, where two or more distinct offenses are contained in the same indictment, it may be quashed, or the prosecutor compelled to elect on which charge he will proceed; but such election will not be required to be made when several counts are introduced solely for the purpose of meeting the evidence as it may transpire, the charges being substantially for the same offense."

The rule is, that although it is not proper to include separate and distinct felonies in different counts of the same indictment, it is proper to state the offense in different ways in as many different counts as the pleader may think necessary. (*Lyons* v. *The People,* 68 Ill. 271.) Although it is not proper to include separate and distinct felonies in different counts of the same indictment, it is allowable to state the same offense in different ways, it being understood that all the counts really relate to one transaction. *Bennett* v. *The People,* 96 Ill. 602.

It is urged that no formal motion was made by plaintiff in error to compel the prosecutor to elect upon which count of the indictment he would proceed. It is a sufficient answer to say, that the indictment at bar shows on its face that each count is for a separate and distinct offense, wholly disconnected from each other, and not based on the same transaction. The indictment charged three several forgeries, one charging the forgery of a receipt in the name of Brinker, for the sum of $2.00 due him, another charging the forgery of a receipt in the name of Seibold, for $1.90 due him, and the other charging the forgery of a receipt in the name of Kruger, for $2.00 due him. Suppose the grand jury had returned three separate bills of indictment, one based on the forgery of the name of Brinker to a receipt for $2.00 due him, another based on the forgery of the name of Seibold to a receipt for $1.90 due him, and the other based on the forgery of the name of Kruger to a receipt for $2.00 due him. Can there be any doubt but that in such case there might have been, if the proofs were sufficient, three several convictions for three distinct crimes, and three different judgments for three different terms of imprisonment? We have already seen, from the authorities, that one mode of enforcing an election is to quash the indictment before plea or trial. When the motion to quash was made, the court did not put the prosecuting attorney upon an election, nor did the prosecuting attorney avail himself of the opportunity of entering a *nolle* as to two of the counts, but the court overruled the motion to quash the indictment, it charging three separate and distinct felonies not parts of the same transaction, and afterwards, in the instructions, submitted to the jury the question of the guilt or innocence upon each and every of the counts. It would have been prudent and discreet in plaintiff in error to have entered a formal motion for an election, and to have objected to evidence, and saved exceptions to the rulings of the court thereon; but, as we have seen, the question was sufficiently raised

and saved by the motion to quash, and the overruling of the same, and the exception taken. In our opinion the circuit court erred in overruling the motion to quash the indictment.

Under our statute an indictment for forgery may be found at any time after the commission of the crime. There is nothing that would hereafter preclude an indictment against plaintiff in error for the forgery of the receipt signed "Henry Brinker." We therefore deem it advisable to briefly pass upon the instructions of the trial court and the merits of the case.

The instructions complained of should have been printed in the abstract, but they are not. In many of the instructions given at the instance of the prosecution the word "forged" seems to be used as synonymous with the expression, "signed without authority."

In the fourth instruction of the series the jury were told, that while it was necessary that the defendant forged the receipts with intent to damage and defraud the respective parties whose receipts were forged, yet that if they found that the defendant forged the receipts, or either of them, "then the law presumes that the said defendant intended to damage and defraud the party whose name is proven to be forged." The intent to damage or defraud was a salient and essential part of the People's case. Such intent was not an irrebuttable presumption of law, but was an open question for the jury, to be determined by the facts and circumstances in proof. It was error to give said instruction.

Instruction No. 6 was erroneous, in that it omitted the qualification or requirement of an intent on the part of the defendant to either damage or defraud any person. See definition of forgery in the Criminal Code, 1 Starr & Curtis' Ann. Stat. pp. 783, 784.

Instruction No. 8 was not only erroneous for the same reason that instruction No. 6 was, but was also erroneous in that it told the jury, "even though you may believe that all three of the parties mentioned in the indictment did agree to give

their witness fees to defendant, still this would not authorize the defendant to sign and forge their names, or either of them, as charged in the indictment; and if you find, beyond a reasonable doubt, that the defendant did forge the names of the said parties, or either of them, as charged in the indictment, you should find the defendant guilty." Under this instruction, even if the jury were satisfied, from the evidence, that Brinker, Seibold and Kruger actually said to the defendant that they gave him their witness fees, or that he, in good faith, believed that they had promised to give him such fees, and were further satisfied, from the evidence, that the defendant honestly and in good faith believed that such action on the part of said witnesses authorized him to sign the names of said several witnesses to the respective receipts, and were also satisfied, from the evidence, that defendant had no intention to either damage or defraud the said three witnesses, or either of them, or any one else, yet they were bound, if they followed the instruction, to find the defendant guilty and consign him to the penitentiary.

We may further say, that at the trial, Evers, the deputy sheriff in whose hands execution and fee bills were placed, testified that when Brinker made claim to the $2.00, and insisted that he had not given his fees to Kotter, he made report to the latter, and Kotter handed him the $2.00; and also testified that Kotter further said that he had been to Brinker's house twice to see him and did not find him, and so he signed his name to the receipt. Brinker testified that he was not at Pergande's, and denied signing the receipt for his fees, or authorizing any one to sign it, or promising to give his fees to Kotter. Plaintiff in error testified that he thinks that Brinker was at Pergande's. From this evidence, and other testimony in the case, we are satisfied that Brinker was probably not at Pergande's, and made no offer to give his fees and sign a receipt for them, but that plaintiff in error afterwards thought, in good faith, that Brinker was at Pergande's and joined in

the agreement to give his fees and receipt for them; that plaintiff in error, being unable to find Brinker, either signed Brinker's name to the receipt or procured some one else to do so, but acting in good faith, and honestly thinking that, under the circumstances supposed by him to be true, he was authorized to do so, and that he had no intention to damage or defraud Brinker.

It may be that plaintiff in error testified at the trial to some matters that were not true; but if so, we regard them as unfortunate and injudicious statements of an ignorant man who was placed in a position of peril, and as having but little bearing, if any, upon the merits of the issue involved in the count for forging the name of Brinker. We are satisfied that he is not guilty of the forgery charged in that count, and that the motion for a new trial should have prevailed on that as well as other grounds.

For the errors indicated herein the judgment of the circuit court is reversed, and it is ordered that plaintiff in error be discharged from custody.

*Judgment reversed.*