## TOWLES *v.* UNITED STATES.

---

CRIMINAL LAW; FORGERY; CRIMINAL INTENT; EVIDENCE.

1. Where, in a prosecution for forgery and the uttering of certain promissory notes, it is proved and admitted by the defendant that by the use of chemicals he altered the dates, amounts, and places of payment of the notes, and that each note was delivered in renewal for a note then to mature, and the' defense is that the debts for which the notes were given in renewal were debts for which the persons whose names were upon the altered notes were legally liable, created in the conduct of a special venture in which they were all interested and in which they had empowered the defendant to act for them, and that the alterations in question were made for their joint benefit and with their authority previously conferred through a course of dealing extending over several years, but the only testimony introduced by the defendant to show implied authority from one of such parties is the fact that the defendant had altered a previous note to which such party's name had been affixed, and which apparently had no connection with the notes forming the basis of the prosecution, and that when such party discovered the alteration he caused the note to be withdrawn and agreed that a genuine note should be substituted in its place, and also that when notices of protest were sent to him he paid no attention to them, the proof is sufficient to sustain a conviction, whatever the course of dealing may have been between the defendant and the other parties to the notes.

2. In such a case the question to be left to the jury is not merely whether the defendant honestly believed that he had authority to alter the notes, but whether he had reasonable grounds for so believing; especially where the only testimony in support of the defense is the unsupported statement of the defendant himself that he had honestly believed that he had such authority.

No. 1095. Submitted January 9, 1902. Decided April 1, 1902.

HEARING on an appeal by the defendant from a judgment of conviction of the Supreme Court of the District of Columbia, upon an indictment for forgery, entered upon the verdict of a jury finding him guilty.        *Affirmed.*

The COURT in its opinion stated the case as follows:

The appellant was indicted for forgery of five several promissory notes for $800, $1,000, $2,500, $2,000, and $5,000 respectively, and for uttering such forged notes with intent to defraud. The indictment contained ten counts, five of them for the several forgeries and five for the uttering of the notes. The fifth and sixth counts were based upon the note for $2,500; and as to this the prosecution offered no testimony, and the appellant was acquitted. Upon the other counts of the indictment he was convicted.

The alteration of the several notes by the use of chemicals to remove therefrom the original dates, amounts and places of payment, and by filling in the blank spaces so made with other dates, amounts and places of payment, the signatures of the makers, payees and indorsers remaining as written by them, and the utterance of these notes so altered to different persons, each note being delivered in renewal of another note then to mature, were proved by the prosecution, and were admitted by the defendant.

The defense, which was sought to be maintained, as stated in the brief filed on behalf of the appellant, was " that the debts, for which these notes were given in renewal, were debts for which the persons whose names are upon the altered notes were legally liable, created in the conduct of a special adventure in which they were all interested, and

in which they had empowered the defendant to act for them in all financial matters; that the alterations in question were made for their joint benefit, and with their authority previously conferred through a course of dealing extending since 1892; it being also insisted that, if such actual authority were not found, the defendant honestly and in good faith believed he had it, and therefore could not be held guilty of the intent to defraud charged in each count of the indictment."

The gist of this defense is that the appellant was authorized by the parties in interest to make the alterations which he confesses to have made, and that he honestly believed that he had such authority. And to support the contention, he sought to show, both by cross-examination of the witnesses for the prosecution and by the testimony of witnesses on his own behalf, that the several notes admitted to have been altered were renewals of previous notes upon which the names of the same parties appeared; that the original notes, as well as those admitted to have been altered had been given on account of the purchase of property near the battlefield of Gettysburg in Pennsylvania, in which it was alleged that the parties were all interested; that Zenas C. Robbins, one of the parties to the notes, had been accustomed to indorse notes in blank for the appellant, who had been his agent for the collection of rents, for the purpose of the renewal of outstanding notes; that the appellant was the financial agent of his associates; that notices of dishonor of the notes in question had been sent to Robbins and to Bryan, another of the parties, and they had paid no attention to such notices; that the appellant had explained to Robbins the alterations which he had made, and the latter expressed no displeasure; that Henry O. Towles, another of the parties, was present at the alteration of the note for $2,500, and caused it thereafter to be discounted; that, when another note, not one of those here confessed to have been altered, but to which the names of Bryan, Henry O. Towles, and the appellant had been affixed, had been discovered by Bryan and Henry O. Towles to have had its date altered by

erasure of the original date by the appellant, it was withdrawn by agreement of the parties and another note, not shown to have been one of those involved in this prosecution, agreed to be substituted for it; and that all the money realized upon the notes had gone into the Gettysburg adventure.

It further appeared in the cause that Bryan had no interest whatever in the Gettysburg enterprise, and that his only connection with it was to act as director in the company which had been organized by the appellant to take the management of it. There is some controversy in regard to the extent of the interest of Robbins, into which it is not necessary here to enter.

This is the sum and substance of the testimony, most of which, after some adverse rulings by the court, was ultimately admitted and permitted to go to the jury; and upon the course of dealing between the parties evidenced by this testimony it was sought by the appellant to have the jury instructed that they might find that the appellant had implied authority to do what he did, and that, even if he did not have such authority, but honestly believed that he had, he should be acquitted on the ground that the fraudulent intent was wanting which was an essential element of the crime with which he was charged. The trial court refused so to rule, and instructed the jury that, if they found from the evidence that the appellant had no authority from the other parties to make the alterations which he confessedly did make, or that he had no reasonable grounds for an honest belief that he had such authority, he should not be excused.

The appellant was found guilty; and from the judgment against him he has appealed to this court.

[At the trial the following prayers were offered on behalf of the United States, and granted by the justice presiding:

1. The jury are instructed that, although you may believe from the evidence that Zenas C. Robbins had an interest in the property owned by the Gettysburg syndicate, and that he

had placed blank notes bearing his indorsement, to be filled out by the defendant in the hands of the latter, and although you may further believe that said Robbins and defendant had mutually indorsed each other's notes for several years, yet from none of those circumstances (even should the jury believe them to have been established by the evidence) or from all combined are you at liberty to infer that defendant had authority from said Robbins to make the alterations in the notes mentioned in the said indictment if they believe such alterations were in fact made.

2. The court instructs the jury that, in determining the weight to be given to the evidence of any witness, they should especially look to the interest which the respective witnesses have in the suit or in its result. When any witness has a direct personal interest in the result of the suit the temptation is strong to color, pervert, or withhold the facts. The law permits the defendant at his own request to testify in his own behalf. The defendant here has availed himself of this privilege. His testimony is before you, and you must determine how far it is credible. The deep personal interest which he may have in the result of the suit should be considered by the jury in weighing his evidence and in determining how far or to what extent, if at all, it is worthy of credit.

3. The law presumes that every man intends the legitimate consequences of his own acts. Wrongful acts knowingly or intentionally committed can neither be justified nor excused on the ground of innocent intent. The color of the act determines the complexion of the interest. The intent to injure or defraud is presumed when the unlawful act which results in loss or injury is proved to have been knowingly committed. It is a well-settled rule, which the law applies to both criminal and civil cases, that the intent is presumed and inferred from the result of his action.

4. In determining as to the guilt or innocence of the defendant you should take into account the testimony in relation to his character for honesty, integrity, and veracity, and you should give to such testimony such weight as you deem proper, but if, from all the evidence before you, you

are satisfied beyond a reasonable doubt, as defined in these instructions, that the defendant is guilty, then his previous good character, if shown, cannot justify, excuse, palliate, or mitigate the offense, and you cannot acquit him merely because you may believe he has been a person of good repute.

The defendant prayed the court to grant the following instructions:

1. The jury are instructed that the presumption of the law, in the absence of evidence, is that the defendant is innocent of the crimes charged against him; that the burden of proof is upon the Government to establish beyond a reasonable doubt every element of such charges, and if there be an absence of such proof upon any of the charges, he is entitled to be acquitted on such charge or charges.

2. If, in the consideration of this cause, the jury shall, under all the evidence, have a reasonable doubt as to any essential fact involved in the issues of the cause, it will be their duty to determine such fact in favor of the defendant.

3. An intention to defraud is an essential element of the crime of forgery, and the burden is upon the Government to prove such intention to defraud as is charged in the indictment beyond a reasonable doubt.

4. One of the essentials of the crime of forgery is that the act charged must have been done without authority, and in this case the burden of proof is upon the Government to establish beyond a reasonable doubt that the alterations of notes admitted to have been made by the defendant were made without authority of the persons other than himself whose names were signed to said notes or indorsed thereon.

5. If the defendant had authority from the said Zenas C. Robbins, Henry O. Towles, and C. C. Bryan to make the alterations in notes charged to have been made by him, he should be acquitted.

6. If the defendant in good faith believed that he had authority from the said Robbins, Henry O. Towles, and C. C. Bryan to make the alterations charged to have been made,

and was not in making such alterations actuated by any corrupt or fraudulent purpose, he should be acquitted.

7. In determining the question whether the defendant in good faith believed that he had authority from Robbins, Henry O. Towles, and Bryan to make the alterations charged to have been made, the jury should take into consideration all the evidence in the case and give to each fact and circumstance such weight as in their opinion it should receive.

8. No evidence having been given by the Government tending to show that Henry O. Towles did not authorize the making of the alterations of notes charged to have been made by the defendant, the jury are entitled to assume that such alterations were made with his consent and authority, and as to him are not forgeries.

9. To the extent that the indictment charges that the alterations complained of were made to defraud Henry O. Towles and were to the prejudice of Henry O. Towles, the jury are instructed to find the defendant not guilty.

10. If the jury believe from the evidence that the defendant and Zenas C. Robbins, Henry O. Towles, and Charles C. Bryan were engaged in a common enterprise requiring the use of large sums of money and the discounting of many promissory notes, and that the defendant, Gilbert B. Towles, was the financial agent of the said persons and charged by them with the duty, among other things, of securing renewals of said promissory notes and with seeing that said notes were not permitted to go to protest; and further find that the alterations charged here to be forgeries were made for the purpose of aiding the common enterprise and for the renewal of their promissory notes given therein and then maturing; and further find that previously to the making of such alterations the defendant had made similar alterations in other notes made or indorsed by the said Zenas C. Robbins, Henry O. Towles, and Charles C. Bryan and used for such common enterprise, and that before the making of the notes described in the indictment said several parties were informed of such previous alterations and either acquiesced therein or made no dissent thereto and afterward continued to indorse

as before; and further find that, having such information,
they continued the defendant as their agent for the making
of renewals of the notes thereafter to mature and given in
such enterprise; and further find that, after such knowl-
edge of alterations by the defendant, the said Zenas C. Rob-
bins indorsed numerous blanks of promissory notes and placed
them in the hands of the defendant, to be by him filled as
might be necessary in caring for the renewals of promissory
notes given in the joint enterprise which might mature while
said Robbins should be absent from Washington; and fur-
ther find that the alterations in question were made while
said Robbins was absent from Washington; and further find
that, upon the maturing of the notes described in the indict-
ment, notices of dishonor of all of them were received by
said Robbins and Henry O. Towles, and notices of dishonor
of the notes for $800.00 and $2,000.00 were received by said
Charles C. Bryan, and that said Robbins and C. C. Bryan
or either of them did not assert the invalidity of such notes
or any of them or the want of authority in the defendant to
make the same; and further find that the said Zenas C. Rob-
bins received the letters from S. T. Thomas and Leon To-
briner, dated October 9 and October 11, 1899, respectively,
which were offered in evidence, informing him in substance
that he would be sued on said notes for $2,000.00 and
$5,000.00, described in the indictment, unless the same should
be promptly paid, and that he made no response to said let-
ters or either of them; and further find that said C. C. Bryan
also received, about October 10, 1899, a similar letter from
a lawyer demanding payment of the note for $2,000.00 men-
tioned in the indictment, and that he answered such demand
by asking for time in which to pay such note, and made no
claim that such note was made without his authority; and
further find that  after receiving such letters, if he did re-
ceive them, said Robbins met with the said Henry O. Towles
in conference to determine upon a plan by which the notes
mentioned in the indictment and all others given by them and
the defendant in the prosecution of said joint enterprise
should be by them and the said defendant secured and paid,

and that it was agreed among them that they should jointly mortgage their several properties to secure such payment; and further find from the evidence that after having such knowledge of the alterations charged the said Zenas C. Robbins indorsed for the said Gilbert B. Towles for use in the said joint enterprise a further note for $2,500.00, the jury are instructed that it is their duty to consider all these circumstances or any of them which they may find from the evidence, in connection with all the other evidence in the case, to determine whether the defendant did or did not honestly believe that he was authorized by the said Robbins and said C. C. Bryan to make the alterations charged in the indictment to have been forgeries.

10*a.* If the jury believe from the evidence that the defendant and Zenas C. Robbins, Henry O. Towles, and Charles C. Bryan were engaged in a common enterprise requiring the use of large sums of money and the discounting of many promissory notes, and that the defendant, Gilbert B. Towles, was the financial agent of the said persons and charged by them with the duty, among other things, of securing renewals of said promissory notes and with seeing that said notes were not permitted to go to protest; and, further, that the alterations charged here to be forgeries were made for the purpose of aiding the common enterprise and for the renewal of their promissory notes given therein and then maturing; and further find that previously to the making of such alterations the defendant had made similar alterations in other notes made or indorsed by the said Zenas C. Robbins, Henry O. Towles, and Charles C. Bryan and used for such common enterprise, and that before the making of the notes described in the indictment said several parties were informed of such previous alterations and either acquiesced therein or made no dissent thereto, and afterwards continued to indorse as before; and further find that having such information they continued the defendant as their agent for the making of renewals of the notes thereafter to mature and given in such enterprise; and further find that upon the maturity of the notes described in the indictment, notices of

dishonor of all of them were received by said Robbins and Henry O. Towles, and notices of dishonor of the notes for $800.00 and $2,000.00 were received by said Charles C. Bryan, and that said Robbins and C. C. Bryan, or either of them, did not assert the invalidity of such notes or any of them, or the want of authority in the defendant to make the same; and further find that the said Zenas C. Robbins received the letters from S. T. Thomas and Leon Tobriner, dated October 9 and October 11, 1899, respectively, which were offered in evidence, informing him in substance that he would be sued on said notes for $2,000.00 and $5,000.00 described in the indictment unless the same should be promptly paid, and that he made no response to said letters or either of them; and further find that said C. C. Bryan also received about October 10, 1899, a similar letter from a lawyer demanding payment of the note for $2,000.00 mentioned in the indictment, and that he answered such demand by asking for time in which to pay such note, and made no claim that such note was made without his authority; and further find that after receiving such letters, if he did receive them, said Robbins met with the said Henry O. Towles in conference to determine upon a plan by which the notes mentioned in the indictment and all others given by them and the defendant in the prosecution of said joint enterprise should be by them and the said defendant secured and paid, and that it was agreed among them that they should jointly mortgage their several properties to secure such payment; and further find that said Robbins did not then assert said notes to be invalid or made without authority; and further find from the evidence that, after having knowledge of the alterations charged, the said Zenas C. Robbins indorsed for the said Gilbert B. Towles, for use in the said joint enterprise, a further note for $2,500.00, the jury are instructed that it is their duty to consider all these circumstances or any of them which they may find from the evidence, in connection with all the other evidence in the case, to determine whether the defendant did or did not honestly believe that he was authorized by the said Robbins and the said C. C. Bryan

to make the alterations charged in the indictment to have been forgeries.

11. In considering the acts of the defendant at issue in this case the jury should consider them in relation to all the circumstances surrounding the defendant at the time of such acts, as shown by the evidence, and they cannot find the defendant guilty unless they find beyond a reasonable doubt that at such time the defendant did not honestly believe that he had authority to make and alter, in the way described in the proof, the notes described in the indictment.

12. If the jury believe from the evidence that in the fall of 1898 Zenas C. Robbins was informed by the defendant of alterations made by him in promissory notes given in the Gettysburg enterprise, and also believe that after that time and upon his leaving Washington, in June, 1899, said Zenas C. Robbins indorsed blank forms of promissory notes, and gave them to the defendant with authority to him to fill them up with such dates and amounts and places of payment, and with the name of Zenas C. Robbins, as payee therein, to the extent that might be necessary to secure renewals of outstanding notes given in the Gettysburg enterprise, then they are instructed that they should consider this fact in passing upon the question of corrupt fraudulent intent in the defendant at the time of making the notes described in the indictment, provided they shall find that the notes mentioned in the indictment were used in the renewal of notes given in the Gettysburg enterprise.

The justice presiding granted the 1st, 2d, 3d, 4th, 5th, 8th, and 9th prayers asked by the defendant, but refused to grant the 6th prayer as asked, and modified the same so as to read as follows:

6. If the defendant in good faith believed and had reasonable grounds for such belief that he had authority from the said Robbins, Henry O. Towles, and C. C. Bryan to make the alterations charged to have been made, and was not, in making such alterations, actuated by any corrupt or fraudulent purpose, he should be acquitted.

So modified he gave it to the jury, and to his refusal to grant the 6th prayer as asked and to the giving of the said prayer as modified the defendant excepted.

ʹThe justice rejected the prayers numbered 10, 10*a,* 11, and 12, and the defendant excepted.—REPORTER.]

*Mr. A. A. Birney* and *Mr. H. F. Woodard* for the appellant:

1. The defendant, claiming authority from circumstances, was entitled to have in evidence all the circumstances of his dealings with and for Mr. Robbins, Mr. Bryan and H. O. Towles, that the jury might determine, (*a*) if he had authority, or (*b*) if he honestly believed he had authority. *Holmes* v. *Goldsmith,* 147 U. S., at p. 164. Defendant's prayers asked only that the jury might be instructed to *consider* all the various circumstances recited therein, or any of them which they might find from the evidence, in connection with all the other evidence in the case, but the court refused to permit it. Within the rule of law governing the receiving of circumstantial evidence, as quoted from the Supreme Court, this was error, *if only the question of authority or want of authority were in issue;* much more flagrant is the error when one of the issues was *the condition of mind* of the defendant, *whether corrupt and fraudulent, or honest, although mistaken,* for where such an issue arises the wildest latitude of proof is permitted, and every circumstance is to be considered. *Wood* v. *United States,* 16 Peters, 342, 360–361. To prove a condition of the mind, *i. e.,* a fraudulent intention, it is always permissible to introduce collateral facts. Proof of other crimes *not* connected with the charge on trial, but of the same nature, is even permitted. To disprove it, similar latitude is permitted. 14 Encyc. of Law (2d ed.), 195, 196; Wait on Fraud. Conveyances, 28, 392, 393; *Com.* v. *Trefethen,* 157 Mass. 180; *S. C.,* 24 L. R. A. 235; *Insurance Co.* v. *Mosley,* 8 Wall. 397; *Flint* v. *Trans. Co.,* 7 Blatchf. 536, 547; *Weed* v. *Carpenter,* 4 Wend. 219. See also *Cowley* v.

*Smith,* 46 N. J. Law, 380, 389. So, the fact of intimacy between the parties was, in an English case, left to the jury as a fact from which they might find that the prisoner " fairly considered " he had authority and intended no fraud. *Reg.* v. *Parish,* 8 C. & P. 94. To show authority from the prosecutor a letter left unanswered from the defendant to the prosecutor has been held to be evidence sufficient for the jury. 1 Whart. Cr. L., Sec. 669; *Parmelee* v. *People,* 8 Hun, 623; *Rex* v. *Beardsall,* 1 F. & F. 529.

In the case at bar, upon their finding that the serial predecessors of the notes in question were indorsed by Robbins and Bryan, that they obtained the benefits of the proceeds of the original discounts, that they gave no personal attention to renewals but charged the defendant with that duty, and that in order to provide for renewals Robbins gave defendant indorsed blanks to be filled at his discretion with the necessary names, dates and amounts, the jury might well have found authority from Robbins and Bryan to Mr. Towles (the indorsed blanks in his possession being exhausted), to reduce a paid note to an indorsed blank, and use it for further renewal of their paper. The jury were required *not to consider* these circumstances, or give them the least weight, and instead of being permitted to determine the question of agency (or belief in agency) from all the circumstances in the case, as prayed by defendant's prayers 7, 10, 10*a* and 12, they were restricted to one or two circumstances only, and all the others, even the business relations and intimacies of the parties serving to explain the facts submitted, were taken from them. Such explanatory facts are always to be considered. 11 Encyc. of Law, 514. An instruction, the tendency of which is to withdraw from the consideration of the jury a considerable amount of important and pertinent testimony, is error. *Clement* v. *Parker,* 125 U. S. 309.

2. The first prayer of the Government should not have been given; it segregated certain proofs from all others, and thus taken denied them weight. The jury were entitled to consider these circumstances *in connection with* all others in proof. It might well be, that, taken alone, the three cir-

cumstances selected by the prayer would not prove authority, when they might, taken with other circumstances in evidence, by themselves, perhaps, equally inconclusive, satisfy the jury that defendant did have authority. If it be permissible for the prosecutor to select links in a chain of evidence, and secure them, one by one, to be discarded from consideration because each by itself is not conclusive, or of great weight, the strongest defense may be destroyed. Such segregation of circumstances from the body of the testimony has been often condemned.

3. The charge of the judge in substance, that to warrant an acquittal on the ground that Towles honestly believed he had authority for his act, the jury must find that belief to be based upon grounds, *in their opinion,* reasonably sufficient, was not only contradictory to the third instruction granted defendant, but fundamentally erroneous. The *corrupt and wicked purpose* being a principal fact in forgery is always charged, and must always be proved. *Montgomery* v. *State,* 12 Tex. App. 323. It is the essence of forgery that it should be with fraudulent intent. 1 Whart. Cr. Law (9th ed.), Secs. 713, 717; 5 Strobh. (S. C.) L. 58. When bad faith is one of the ingredients of the offense it must be proved beyond a reasonable doubt. Whart. Cr. Ev., Sec. 727. So every accepted definition of the offense of forgery includes fraudulent intent; *without this there can be no forgery.* 1 Whart. Cr. L., Sec. 653 *et seq.;* 2 Bish. Cr. L. 523, 596; Roscoe Cr. Ev. 456–457. " It would introduce a new and very dangerous element into the case to say that the jury must decide whether the defendant had reasonable grounds for his belief." Sharswood, J., in *Delworth* v. *Bradner,* 85 Pa. St. 238. See also *Rex* v. *Forbes,* 7 Car. & P. 224, a case of forgery; *Reg.* v. *Parish,* 8 C. & P. 94; *Kotter* v. *State,* 150 Ill. 441; *Parmelee* v. *People,* 8 Hun, 623; *Shanks* v. *State,* 25 Tex. 326.

4. The rule in actions for deceit. No sound distinction in principle can be made between the criminal action for forgery and the civil action for deceit. In each a necessary averment is that the act charged was done " with intent to defraud," and the rules of evidence are, of course, the same in

the civil and criminal courts. 4 Wall. 472. If honesty of belief in an absolutely untrue statement is sufficient to prevent a verdict of guilty in deceit, it must be equally potent in forgery. That it is sufficient in deceit, and that in that action a jury *will not be permitted to try the question of reasonableness,* is settled both in the United States and England. *Derry* v. *Peek,* 14 App. Cas. (H. of Lords). 337; *Angus* v. *Clifford,* 2 Ch. Div. 449, 470; *Glasier* v. *Rolls,* 42 Ch. Div. 436, 458, 459, 460; *Griswold* v. *Gebbie,* 126 Pa. St. 353, 363; *Lamberton* v. *Denham,* 165 Pa. St. 129, 133; *Young* v. *Covel,* 8 Johns. 23; *Salisbury* v. *Howe,* 87 N. Y. 128, 135; *Holdom* v. *Ayer,* 110 Ill. 448; *Terrell* v. *Bennett,* 18 Ga. 404; *Lord* v. *Goddard,* 13 How. (S. C.) 198. In *Derry* v. *Peek,* decided in 1889, the very point was in question. *Held:* A false statement made through carelessness, and *without reasonable ground for believing it to be true,* may be evidence of fraud, but does not necessarily amount to fraud. Such a statement, if made in the honest belief that it is true, is not fraudulent, and does not render the person making it liable in an action for deceit. Opinions were rendered by Lord Halsbury, L. C. (p. 343), Lord Watson (p. 345), Lord Bramwell (p. 351), Lord Fitzgerald (p. 358), Lord Herschell (pp. 361, 367, 369, 373), and all concurred. The true rule is, that the charge of fraud cannot be sustained, unless the defendant knew at the time he made the representation that it was false, or unless he assumed to have actual knowledge of the facts stated, when in truth he had no such knowledge. For a mistake, however negligent or unreasonable, he may not be held liable. The fact that he has reason to believe his statements to be untrue, or the fact that his grounds for belief were slight and unreasonable, *will be merely evidence for the jury on the question whether there was a fraudulent intent or not.* 14 Encyc. of Law (2d ed.), 104; *Commissioners* v. *Tolman,* 149 Mass. 249; 1 Whart. Cr. Law, 613, note.

*Mr. Ashley M. Gould,* United States Attorney for the District of Columbia, and *Mr. Jesse C. Adkins,* Assistant Attorney, for the United States.

Mr. Justice MORRIS delivered the opinion of the Court:

It is unnecessary to specify in detail the various exceptions taken by the appellant during the trial, or the nineteen several assignments of error based thereon. Both in the brief filed on his behalf and in the oral argument of counsel it was conceded that there were only two questions in the case:

(1) Whether the circumstances relied upon by the appellant to establish his claim of implied authority, and to support his claim of honest intention, were proper to be considered by the jury as evidence in that regard.

(2) Whether, if the appellant honestly believed, as he states that he did, that he had authority to make the alterations in question, and yet the jury believed from the evidence that he had no reasonable ground for such belief, he could properly be held guilty of forgery.

1. In the discussion of the case we may dismiss from our consideration the connection of Zenas C. Robbins with the altered notes and with the transactions which led up to them. Robbins is an old man, upwards of ninety years of age, of defective memory, and on account of such defective memory perhaps not entirely consistent in his statements. His course of dealing with the appellant, although falling far short of giving the authority claimed to alter notes, was somewhat equivocal. But even if we assumed it as proved that he had given express authority to the appellant to make the alterations admitted to have been made, this would not have served in any manner to exonerate the appellant from the charge of forgery. For there is no course of dealing shown, or even sought to be shown, between the appellant and Charles C. Bryan, that would give any warrant whatever for the belief in the existence of any authority, express or implied, from Bryan to the appellant; and the forgery was complete by the alteration of the notes as to Bryan, without any reference to the other parties whose names were on the notes.

The only testimony introduced, or sought to be introduced, to show implied authority from Bryan to the appel-

lant, for express authority is not pretended, to alter the notes in question, is the fact that the appellant had altered a previous note to which Bryan's name had been affixed, and which apparently had no connection with the notes of this suit, and that, when Bryan discovered the alteration, he caused it to be withdrawn and agreed that a genuine note should be substituted in its place. And there is also the further fact that, when notices of protest had been sent to him, he paid no attention to them. But we are utterly at a loss to see how either one or both of these facts could reasonably be construed by any man into a grant of authority to commit further and other alterations. If they prove anything, it is quite the reverse of that contention.

There is not a scintilla of evidence in the record to warrant the assumption of any course of dealing between Bryan and the appellant which would in any manner justify the appellant's action, or give any ground whatever for the existence of implied authority. As to Bryan the forgery is palpable, without excuse, without justification, without the slightest pretense of authority. And this being so, the proof was amply sufficient to sustain the conviction.

2. But the great stress of the argument on behalf of the appellant is laid on the supposed absence of fraudulent intent on his part, and on the ruling of the trial court, claimed to be erroneous, to the effect that the appellant could justify his action only by showing authority, express or implied, from the parties affected by the alteration of the notes, or the existence of an honest belief that he had such authority, based upon reasonable grounds. The contention is that the existence of a reasonable belief was sufficient, whether the grounds therefor were reasonable or not in the estimation of the court or jury, and that it would be a hardship and a dangerous thing to hold a man to accountability for error in the formation of such a belief, when such error would be developed only in the light of subsequent events. The proposition is plausible, but without adequate foundation in the law, or in the circumstances of this case as developed in the record.

The only testimony in the case tending to prove honest belief on the part of the appellant that at the time he made the alterations and changes in the notes and uttered the same, he had authority so to do, is the wholly unsupported statement of the appellant himself to that effect. Other than the course of dealing already stated, which amounted to an absence of all course of dealing so far as Bryan was concerned, there is absolutely no testimony whatever to show any facts that would warrant such a belief. And yet in this condition of the testimony the trial court was requested to instruct the jury that " if the defendant in good faith believed that he had authority from the said Robbins, Henry O. Towles and C. C. Bryan to make the alterations charged to have been made, and was not in making such alterations actuated by any corrupt or fraudulent purpose, he should be acquitted;" and that, " in determining the question whether the defendant in good faith believed that he had authority from Robbins, Henry O. Towles, and Bryan, to make the alterations charged to have been made, the jury should take into consideration all the evidence in the case and give to each fact and circumstance such weight as in their opinion it should receive." There was no testimony on which to base these instructions, and they were therefore very properly refused. It is idle for a man to say that he had no criminal intent when his actions necessarily imply criminality. It is idle for a man who deliberately and knowingly administers poison to another to say that he did not intend to harm him. It is idle for the man who has recourse to the deliberate arts of the forger, the use of chemicals wherewith to alter negotiable paper, to say that he intended to do no wrong. This is one of the cases where actions speak louder than words, and protestations are unavailing in the presence of deliberate criminality. To allow such protestations to have effect would be to nullify the criminal law.

It is very true that, in the case of forgery, as in most other, although not in all, criminal offenses, a wrongful intent is an essential element of criminality; and the wrongful intent must be both alleged and proved. But the proof of

intent is to be found in the circumstances of the act; and protestations of innocence, in disproof of guilt, are useless in the absence of explanation of the inculpating circumstances. The honest belief, which would justify or excuse an act otherwise wrong, must be founded upon reasonable ground sufficient to warrant such a belief. Of course, the question of honest belief arises only where the belief is in fact erroneous, and where consequently the reasonable grounds for its support are shown in the sequel to be untenable. Absolute truth is not required for the formation of an honest belief, but only such facts and circumstances as might induce the average man to entertain the belief. The standard is not how things appear at the trial, but how they appeared at the time of the occurrence. Where there is only honest mistake, there is no fraudulent or criminal intent.

In accordance with these principles was the instruction on this point given by the court to the jury, and which was in these words:

" The only evidence in the case tending to prove that the defendant had authority to alter the notes mentioned in the indictment, or that he had reasonable grounds of belief that he had, is that tending to prove that he had made alterations in prior notes, and that the same and the alterations in these notes mentioned in the indictment were called to the attention of Robbins and Bryan, and that they did not object thereto or acquiesced therein and did not deny their liability thereon. It is for you to determine whether such facts have been proven, and, if so, whether they afford sufficient grounds to justify you in finding that the defendant had authority, or had grounds for a reasonable and honest belief that he had authority to make the alterations in the notes mentioned in the indictment. If you should find that the defendant had no authority to make the alterations of the notes mentioned in the indictment, and no grounds to justify a reasonable man in believing that he had such authority, the fact, if you should find it to be a fact, that the said Robbins and Bryan, or either of them, did not object

thereto, or acquiesced therein, when said alterations were called to their attention, could not be considered by you as exonerating the defendant from the crime of forgery, if you find that he committed such crime in making the alterations."

This instruction in fact stated the law more favorably to the defendant than he was entitled to have it. For, as we have said before, omitting all consideration of the connection of Robbins with the notes, as we may well do, there is not a scintilla of evidence in the record or in the testimony offered by the appellant to be introduced, tending to show any acquiescence by Bryan in the alterations. So far as Bryan was concerned, there was an utter absence of all evidence of facts and circumstances upon which to found any belief; and as to him the case went to the jury upon the sole and unsupported statement of the appellant that " he honestly believed at the time he made such alterations and changes in said notes and uttered the same that he had authority as aforesaid, and had not betrayed the confidence of said Robbins, Bryan and Henry O. Towles, or done anything wrong."

The law, as stated by the trial court, that for the entertainment of a reasonable belief which would exclude the idea of intentional wrong there must be a basis of reasonable ground to be deduced from the facts and circumstances of the case, seems to us to be the plain dictate of reason, and to be amply supported by authority. *Addington* v. *United States,* 165 U. S. 184; *Coffin* v. *United States,* 162 U. S. 664; *Beard* v. *United States,* 158 U. S. 550; *Regina* v. *Beard,* 8 Carr. & Payne, 143; *Queen* v. *Tolson,* L. R., 23 Q. B. D. 168; *Squire* v. *State,* 46 Ind. 459; *Dotson* v. *State,* 62 Ala. 141; *Browning* v. *Bank,* 13 App. D. C. 1; *Claiborne* v. *State,* 51 Ark. 88; *Regina* v. *Parish,* 8 Carr. & P. 94.

On the other hand, however, various cases are cited on behalf of the appellant, which are supposed to establish the doctrine that in cases like the present the jury should not be permitted to try the question of reasonableness of the belief, but only that of its honesty. Among the cases relied

on in this connection are *Lord* v. *Goddard,* 13 How. 198; *Derry* v. *Peek,* 14 App. Cases (H. of L.), 337; *Glasier* v. *Rolls,* L. R., 42 Ch. Div. 436; *Salisbury* v. *Howe,* 87 N. Y. 128; *People* v. *Baker,* 96 N. Y. 340; *Griswold* v. *Gebbie,* 126 Pa. St. 353; *Lamberton* v. *Denham,* 165 Pa. St. 129; *Kotter* v. *State,* 150 Ill. 441; *Rex* v. *Forbes,* 7 Car. & P. 224; *Regina* v. *Parish,* 8 Car. & P. 94. And there are others. Most of these cases are civil actions for deceit. We think that a careful reading of these cases will show that they have no such force as is here claimed for them, and that the difference between them and the authorities before cited is one rather of language than of substance. The mistake in their application lies in the assumption that the expression of honest belief is equivalent to proof of honest belief. Each and all of these cases required some foundation for the honest belief claimed to exist, and in no one of them was there reliance upon mere assertion of honest belief utterly unsupported by facts of any kind. The question at issue was the honesty of the belief, and not its reasonableness as it should appear to the jury at the time of the trial — in other words, not whether the belief was in itself reasonable, but whether an honest belief actually existed, based upon a fairly reasonable foundation.

In the case of *Lord* v. *Goddard,* 13 How. 198, it was said by the Supreme Court of the United States:

"The gist of the action is fraud in the defendants and damage to the plaintiff. Fraud means an intention to deceive. If there was no such intention, if the party honestly stated his own opinion, believing at the time that he stated the truth, he is not liable in this form of action, although the representation turned out to be entirely untrue."

But there was testimony in the case of facts and circumstances to show that the defendants were honest in their belief, although careless and negligent in sifting the sources of information. It was the question of their negligence that had been left to the jury rather than that of the existence of an honest belief.

In the case of *Derry* v. *Peek,* H. of L., 14 App. Cas. 337, the holding of the court was that a false statement made through carelessness, and without reasonable ground for be- lieving it to be true, may be evidence of fraud, in an action for deceit, but does not necessarily amount to fraud; and that such a statement, if made in the honest belief that it is true, is not fraudulent. But this leaves untouched the ques- tion of the honesty of the belief, which must be tested by the conditions existing at the time and the reasonableness of the existence of such a belief based upon such conditions.

Of the cases of *Salisbury* v. *Howe,* 87 N. Y. 128; *People* v. *Baker,* 96 N. Y. 340; *Kotter* v. *State,* 150 Ill. 441; *Rex* v. *Forbes,* 7 C. & P. 224, and *Regina* v. *Parish,* 8 C. & P. 94, the same criticism may be made. The question in all of them was that of honest or fraudulent intent on the part of the defendant, not of the reasonableness of such intent to the minds of the jury — that is, whether the jury, in the light of the knowledge which they had, would have come to the same conclusion. The honesty of the intent, in all analy- ses of the question, must necessarily be determined by the circumstances of the party at the.time the belief is formed and acted upon; and therefore the question for the jury in all cases is whether the defendant in the presence of such circumstances could reasonably have formed the belief which he claims to have formed. The question is not whether the belief was in itself right or wrong, reasonable or unreason- able; but whether a belief now shown to have been errone- ous, and therefore under the light of the present time, un- reasonable, inasmuch as all error is in itself unreasonable, was unreasonable at the time at which it was formed and under the circumstances under which it was formed.

The cases of *Dilworth* v. *Bradner,* 85 Pa. St. 238; *Gris- wold* v. *Gebbie,* 126 Pa. St. 353; and *Lamberton* v. *Denham,* 165 Pa. St. 129, seem most strongly in the generality of their language to support the appellant's contention. In the first of these cases the Supreme Court of Pennsylvania, by that eminent jurist, Mr. Justice Sharswood, said: ".It would in- troduce a new and very dangerous element into the case to

say that the jury must decide whether the defendant had reasonable grounds for his belief." And this doctrine was approved and followed by the Supreme Court in the other two cases cited.

Notwithstanding the great name of Mr. Justice Sharswood, and the respect due to so able a tribunal as the Supreme Court of Pennsylvania, if this utterance is to be taken literally as expressed and without reference to the circumstances of the case in which the enunciation was made, we would find ourselves constrained to decline to follow it. But we think that it should not be dissociated from the circumstances of the case; and we are of opinion that, when it is considered in connection with the context, it means no more than was said and intended in the various other cases that have been cited, namely, that it was the question of the honesty of the belief of the defendant in view of his surroundings and the circumstances of his action that was to be determined, and not whether the jury themselves as reasonable men, with the light before them at the time of trial, would have done the same thing. But plainly to determine the question of the honesty of the defendant's belief, the circumstances must be taken into consideration; and that necessarily means that the jury must pass upon the reasonableness of those circumstances as a basis for honest belief. We are wholly unable to comprehend how the question of honesty of belief is otherwise to be tested, unless indeed we accept the absurd and untenable proposition that the defendant's own unaided statement is conclusive of it.

Upon the whole case we are of opinion that, if there was any error in the rulings of the trial justice with regard to the exclusion of evidence sought to be introduced by the defendant, such error was cured by the subsequent admission of the testimony; and that there was no error in the instructions given to the jury. Being of this opinion, we must *affirm the judgment appealed from. And it is so ordered.*