[No. 20973.  In Bank.—December 30, 1893.]

THE PEOPLE, RESPONDENT, *v.* GEORGE MUNROE, APPELLANT.

CRIMINAL LAW—FORGERY—ASSIGNMENT OF UNEARNED SALARY OF TEACHER. A writing purporting to be a sale or assignment of the unearned salary of a public school teacher is the subject of forgery.

ID.—INSTRUMENTS VOID AS AGAINST PUBLIC POLICY—ULTRA VIRES.—Instruments which are not *nudum pactum,* but merely void on the ground that they are against public policy or *ultra vires,* are the subject of forgery.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*W. E. Cox, W. T. Williams,* and *Edgerton & Adams,* for Appellant.

*Attorney-General W. H. H. Hart,* for Respondent.

GAROUTTE, J.—This case was decided in Department, but a rehearing having been ordered, it is now before the court in Bank. The appellant was convicted of the crime of forgery, and prosecutes this appeal from the judgment and order denying his motion for a new trial. It is insisted that the facts charged in the information do not constitute the offense of forgery, and that is the only matter relied upon for a reversal of the judgment which demands our attention.

We will not enter into a detailed analysis of the various parts of the writing which is the subject of the forgery here charged, but will view it from the standpoint of appellant's claims, and for the purposes of this investigation will concede the writing to be an assignment or sale of the unearned salary of a public school teacher for the next ensuing month, together with an order upon the city auditor of Los Angeles for the warrant representing such salary. That being the fact, it is further claimed that Helen Henry, the purported author of the writing, being a public school teacher, is a public officer, and that the sale or assignment of an unearned salary by a public officer is void, being against public policy; and the writing being void it cannot be the basis of a charge of forgery. The information charged that this writing was forged and passed by the defendant with intent to defraud one J. W. Jackson, the evidence disclosing that the writing was assigned to Jackson for a valuable consideration, and that subsequently the warrant was delivered to him by the auditor, and the money paid thereon by the treasurer.

Section 470 of the Penal Code provides that "Every person who with intent to defraud another falsely makes, alters, forges, or counterfeits any charter (then follows a list by name of almost every conceivable kind and character of writing), is guilty of forgery." Upon a strict construction it might in good reason be held that the foregoing definition of forgery curtails the elements

necessary to be present in order to constitute the offense, as contradistinguished from forgery recognized by various writers upon criminal law. Under our statute we hold burglary to be an entry into a building, with intent to commit larceny, and upon the same lines it might be held that forging any writing named in this section, with intent to defraud another, is forgery, and indeed it is apparent that the character of the writing is quite insignificant when placed in the balances opposite the other element—the intent to defraud. But we will take broader ground, and concede the essential ingredients of the crime of forgery to be: 1. A false making of some instrument; 2. A fraudulent intent; 3. If genuine, the writing might injure another. The third element stated is expressly recognized by this court to be the true test as to the nature of the writing. (*People* v. *Frank*, 28 Cal. 514; *People* v. *Tomlinson*, 35 Cal. 506; *Ex parte Finly*, 66 Cal. 263.) There is some general language in the Tomlinson case, taken very probably from *People* v. *Shall*, 9 Cow. 784, to the effect that the writing, if genuine, must be sufficient to form the basis of a legal liability; but such is not the true test, in our opinion. The requirements of the statute demand no such construction, and its adoption would result in the escape from justice of many criminals.

Appellant's counsel has cited many cases to the effect that a contract against public policy is illegal and void, and has no standing in courts. He has also cited cases to the effect that a void contract cannot be the subject of forgery. But he has cited no case to the effect that a contract against public policy is not the subject of forgery, and after diligent examination of authorities we have failed to find a case to that point, and this court is not willing to be the first judicial body to declare such a doctrine. It would serve no useful purpose to review in detail the cases cited by counsel holding that void contracts are not the subject of forgery. Many of them are cases of *nudum pactum*, and others follow the very extreme doctrine laid down in *People* v. *Shall*, 9

Cow. 784, where the learned judge said: "I agree that a man ignorant of the technical requirements of a special agreement might be imposed upon by the paper in question. This remark probably embraces a majority of the community in which we live, and most likely the very parties named in the false instrument. In this view, no doubt, the deed of which the defendant stands convicted involves all the moral guilt of forgery. He believed that he had succeeded in fabricating what purported to be a valid promissory note. But legal forgery cannot be made out without imputing a possible or even actual ignorance of the law to the person intended to be defrauded. However dark may be the moral hue of a transaction, courts of justice can only act upon legal crime—upon criminal breaches of professional obligation." It is sufficient to say that this language carries the principle to limits which we cannot follow.

The more liberal doctrine, and the doctrine which in the interests of good government should be sustained, is declared in *People* v. *Krummer*, 4 Parker's Criminal Reports, 219, where the court says: "We are never called upon to determine whether in legal construction the false instrument or writing is an instrument of a particular name or character. "It is a matter of perfect indifference whether it possesses or not the legal requisites of a bill of exchange, or an order for the payment of money, or the delivery of property. The question is whether upon its face it will have the effect to defraud those who may act upon it as genuine, or the person in whose name it is forged. It is not essential that the person in whose name it purports to be made should have the legal capacity to make it, nor that the person to whom it is directed should be bound to act upon it, if genuine, or have a remedy over."

There is no question but that a writing which is a *nudum pactum* is not the subject of forgery, but a contract which a court will not enforce, or even recognize, because it is against the policy of the law, cannot be termed a *nudum pactum*. A forged contract, even though it covers

a subject matter which makes it void, as against public policy, upon its face may present such an appearance that, if genuine, it might injure another, and such a one satisfies the test which we have laid down. The contract may be such that there would not only be a possibility of its injuring another, but a very strong probability of such injury, for there are many contracts against public policy, which upon their face present a most innocent and most inviting appearance. Even though a contract presented to a court of justice would be declared void as against public policy, still it may have a pecuniary value to its owner. It could have such a value as that the theft of it would be the subject of larceny, and it would be anomalous to hold an instrument the subject of larceny, and yet its counterfeit not of sufficient value to form the basis of a charge of forgery. If the stealing of the genuine instrument would be larceny, surely the false making of such an instrument would be forgery.

To declare the law to be that all contracts which are not enforceable, because against the policy of the law, are not the subject of forgery, would be offering a *carte blanche* to the professional forger of which he would not be slow to take advantage, and hereafter he would confine himself to the manufacture of spurious paper in the nature of contracts against public policy; for he would thereby be enabled to make a very respectable living—respectable as to the size of his income, and respectable in that such acts would be no crime.

Contracts against public policy cover a multitude of subjects, and in many cases the determination of their character in this regard calls for the exercise of the nicest discrimination from the most learned judges. From the face of the contract itself courts will disagree as to its validity or invalidity. All things which are opposed to moral precepts may be said to be against public policy, and thus we have a great and uncertain field opened up before us. Contracts pertaining to restraint of trade and competition in business have been entered into by parties in the utmost good faith, and

upon considerations of the gravest character; and still those contracts subsequently have been declared to be invalid as against public policy. It cannot be contended for a moment that such contracts could not be forged. Suppose a contract contained a covenant upon the part of a competing dealer that he would not again engage in business within the state of California; thus we have a covenant clearly void under our code as being in restraint of trade, yet we think such a contract is the subject of forgery. Certainly that character of instrument might be well calculated to defraud the tradesman still remaining in business. He might be willing to pay large sums of money for that agreement, well knowing at the time that he could not enforce it in law, but knowing his man and believing the covenants would be considered binding by the party making them, and that no attempt would ever be made to evade them. Such an agreement is of full value until denied. It answers every purpose of its creation until that time, and perchance it may never be denied.

The foregoing principle is fully illustrated in *Commonwealth* v. *Pease*, 16 Mass. 91. The defendant was charged with theft bote, defined by Blackstone as where a party robbed not only knows the felon, but also takes his goods again, or *other amends*, upon agreement not to prosecute. The offense is here recognized as compounding a felony. The question in that case was: Would a promissory note of the defendant satisfy the term "other amends?" Parker, chief justice, said: "It is argued that it will not, because such a note will be void in law, and in fact nothing may ever be received, but there seems to be no reason for this nice and critical construction of the words. The note, although voidable, is in fact of value to the holder until it is avoided. It may never be disputed."

Obligations *ultra vires* stand upon the same level with contracts against public policy as to the offense of forgery. If one is not the subject of forgery, neither is the other. In England corporations are created by special

act of Parliament. Within those acts are found the measure of their powers. In this country the general statutes, in conjunction with the articles of incorporation which are public records, form the limitation of their powers. Thus the world deals with corporations with a knowledge of the extent of their powers; and ignorance of the law forms no defense to the plea of *ultra vires*. If this appellant's position be sound, all contracts of corporations which are *ultra vires* are not the subject of forgery. Neither would bonds of municipal corporations which are *ultra vires* form the foundation for a prosecution for forgery. The determination of the powers of corporations, both private and municipal, is a question often involving the most complex principles of legal jurisprudence, and, if *ultra vires* contracts may not be forged, a rich field for the successful practice of fraud is presented to the forger.

In *State* v. *Eades*, 68 Mo. 150, 30 Am. Rep. 780, it is said that the fraudulent making of a false municipal certificate of indebtedness is forgery, though the municipality had no power to issue such certificate, and this principle is in line with sound reason, and fully commends itself to our views. It is held that contracts made under an unconstitutional law are void. Every man is presumed to know the law, and appellant's contention would free the criminal forging such a contract: *Vilhac* v. *Stockton etc. R. R. Co.*, 53 Cal., 208. In other words, it would be a good defense to a prosecution for forgery that the law under which a genuine contract similar to the forged one might be made, is unconstitutional. Such a plea is too remote from the crime of which the accused stands charged, and his liberty must be regained upon more substantial grounds.

As to what contracts are against public policy, or *ultra vires*, or void as creations under unconstitutional statutes, we think matters entirely foreign to a prosecution for forgery. In the examination of such grave and abstruse questions, the criminal element of the case would soon be lost to view. For the purposes of

the case, we conceded at the outset that this instrument would be declared void by a court, as against public policy, but, if that question was a live issue in the case, this contract possibly might be declared valid, upon the ground that a teacher in the public schools is not a public officer. Certainly the law as to that point is not so plain but that an ordinary layman in the exercise of the greatest care might not be defrauded in taking an assignment of a public school teacher's unearned salary.

There is a further view to be taken of this question, which is also fatal to appellant's claims, and which was incidentally touched upon in noticing the Pease case. Aside from the nonenforceable character of this contract in a court of justice, it has an inherent, substantial value. It is said in Morton's case, 2 East Pleas of the Crown, 955, "that though a compulsory payment by course of law could not have been enforced for want of the proper stamp, yet a man might equally be defrauded by a voluntary payment being lost to him." It cannot be said that a contract has no value because you have no standing in court to enforce it. Who can say in advance that the money will not be voluntarily paid, as agreed upon by its terms? Who can say that Helen Henry would not have lived up to the very letter of this instrument, if it had been her genuine contract? If her word is as good as it should be; if her conduct of the business affairs of life is actuated by those principles of truth and justice which surely should be found in the breast of every teacher in our public schools, then her act and deed, as evidenced by a writing such as is present in this case, would be a valuable instrument to the holder thereof; just as valuable as though it were enforceable in the courts of the land. If a genuine instrument signed by Helen Henry similar to the forged one found in this case possessed such value, the conclusion is irresistible that the forged paper was one that might defraud another.

Again, if the paper had been the genuine act of Helen Henry, and upon the strength of her signature

the proper officer had paid the amount it called for to Jackson, the legal holder thereof, however invalid the writing may have been as against public policy, the money would have been beyond the reach of Helen Henry forever. She could not have recovered it from the officer paying it out, or from Jackson who received it. Her mouth would be closed to assert ownership in herself. The writing would serve as a perpetual barrier to the recognition by courts of any claim upon her part; and, for this reason also, the instrument was of such value as to make it the foundation of a charge of forgery.

It is ordered that the judgment and order be affirmed.

McFARLAND, J, PATERSON, J, and HARRISON, J., concurred.

DE HAVEN, J.—I concur in the judgment. The writing alleged to have been forged is one which if genuine would be void, because against public policy, but nevertheless such a writing is in my opinion the subject of forgery.