[No. 15179.   Department Two.   April 8, 1919.]

THE STATE OF WASHINGTON, *Respondent*, v.
A. C. PETRIDGE, *Appellant*.[1]

FORGERY (7-1)—AUTHORITY TO SIGN—EVIDENCE.  A prosecution for forging the name of accused's father to a mortgage must fail and a verdict of not guilty should be directed, where it appears from the evidence of the father, testifying for the state, that he not only authorized his son to make the mortgage, but afterwards ratified it.

Appeal from a judgment of the superior court for King county, Frater, J., entered May 22, 1918, upon a trial and conviction of forgery.  Reversed.

*Geo. H. Rummens* (*S. H. Steele*, of counsel), for appellant.

*Alfred H. Lundin* and *John D. Carmody*, for respondent.

MOUNT, J.—The appellant was charged with the crime of forgery in the first degree.  He entered a plea of not guilty thereto, the cause was tried to the court and a jury and resulted in a verdict of guilty. A judgment was entered thereon, from which this appeal is prosecuted.

At the close of the evidence, counsel for the appellant moved the court for a directed verdict of not guilty.  The court denied this motion.

The facts are not disputed.  It appears that, some time prior to May 23, 1916, the appellant and his wife were living at the home of appellant's father, who was a widower.  The appellant's father had been in poor health for some years and the appellant had transacted all his business.  It was his custom to sign his father's name to checks and receipts for rent and the like.  Some time in May, the appellant, who is engaged

[1] Reported in 180 Pac. 150.

in business, asked his father for $1,200 or $1,500. The father said to him:

"I haven't the money now, son, but, if you want to, go and mortgage the place, but you will have to pay the interest and pay it off."

Thereupon the appellant made an application for a loan of $1,200, to be secured by a mortgage upon his father's home in Seattle. This application was signed "H. B. Petridge, By *A. C. Petridge*." The latter is the appellant. This application was presented to William D. Perkins, who agreed to make the loan and take the mortgage upon the property. Mr. Perkins understood that the mortgage was being made by H. B. Petridge, the appellant's father. After abstracts had been examined and found correct, a mortgage was prepared and left in the banking house of Mr. Perkins. The appellant was notified that the mortgage was ready for execution. He thereupon went to the banking house—Mr. Perkins being absent, the cashier being present—and stated to the cashier that he had come to sign the mortgage. He had never before executed a deed or a mortgage. When the prepared mortgage was produced, the appellant asked the cashier how it should be signed. The cashier (who was not personally acquainted with the appellant), taking him to be the owner of the property, told him to sign it "H. B. Petridge." Appellant signed and acknowledged it as H. B. Petridge. Some time thereafter, when it was discovered that the mortgage was not executed by H. B. Petridge, appellant was indicted by the grand jury.

Upon the trial of the case, it was admitted that appellant signed and acknowledged the mortgage in his father's name; that he obtained the check which was also in his father's name, that he indorsed the check

in his father's name, and also by his own name, obtained the money thereon and used it in his business. Mr. H. B. Petridge, the father of the appellant, was called as a witness by the state; and, after testifying that his son and wife lived with him, that he was a widower, that his health had not been good, that his son for several years had been doing business for him and collecting rents and taking care of his property; and, after testifying that his son signed his name and that his son had asked him for $1,200 or $1,500; he testified as follows:

"Well, I told him at the time I didn't have the money, but I says, 'You go ahead and raise this money on the house, on our home.' I says, 'You go ahead and put a mortgage on our home.' Q. Meaning that same home you were living in? A. Yes, that same home we were living in. Q. You subsequently learned he had gotten the money? . . . A. . . . yes. Q. Now then, when your attention was called to it, did you ever say or attempt to say the boy did not have authority? A. No. Q. When Mr. Perkins called your attention to it, did you tell him the mortgage was all right with you? A. I did; I told him it was all right."

This was the evidence of the father, who owned the property and who testified as a witness for the state. This shows conclusively that the son had authority from the father to make the mortgage. Upon this testimony, there could be no conviction for forgery, even though the appellant signed and acknowledged the mortgage in the name of his father. The mortgage is a valid mortgage against the property because the father, who is the owner of the property, not only authorized the making of the mortgage, but after it was made he acknowledged that the mortgage was all right, thereby ratifying the act of the son. In the

case of *People v. Whiteman,* 114 Cal. 338, 46 Pac. 99, the court said:

"To prove that an accused person signed the name of another to an instrument, and that he passed such instrument as genuine, does not prove the commission of a crime. It must still be shown that it was a false instrument, and this is not proven until it is shown that the person who signed another's name did so without authority. Until this proof is made it is not shown to be a false instrument, and the defendant is not put to his proof at all."

To the same effect are: *People v. Lundin,* 117 Cal. 124, 48 Pac. 1024; *Romans v. State,* 51 Ohio St. 528, 37 N. E. 1040; and *State v. Swan,* 60 Kan. 461, 56 Pac. 750. In the latter case it is said:

"If the appellant had authority from Jordan to sign his name, the act was not forgery. . . . The burden of proof was upon the state to show that the check was signed by the appellant without authority from Jordan."

The facts show conclusively that there was no intent to defraud on the part of the appellant, and also that the appellant had authority from his father to execute the mortgage. Upon these facts, it is too plain for cavil that there was no question to be submitted to the jury. It was the duty of the court to direct a verdict of acquittal.

The judgment appealed from is therefore reversed, and the cause ordered dismissed.

CHADWICK, C. J., FULLERTON, PARKER, and HOLCOMB, JJ., concur.