[Crim. No. 2424.   First Dist., Div. One.   Apr. 10, 1947.]

THE PEOPLE, Respondent, v. ALFRED L. CLINE, Appellant.

J. W. Ehrlich and Roy A. Sharff for Appellant.

Robert W. Kenny and Fred N. Howser, Attorneys General, Miriam E. Wolff, Deputy Attorney General, Edmund G. Brown, District Attorney, and Norman Elkington, Assistant District Attorney, for Respondent.

WARD, J.—Whether a judgment of conviction under nine counts of forgery can be sustained, is the question raised by this appeal.

The first count of the indictment charges Alfred L. Cline with forgery committed as follows: "The said Alfred L. Cline on or about the 9th day of November A.D. nineteen hundred and forty-five at the City and County of San Francisco, State of California, with the intent then and there to cheat, prejudice, damage and defraud Elizabeth Cline, Walter Graf and Title Insurance Company, a corporation, did then and there knowingly, willfully, fraudulently, falsely, and feloniously make, alter, forge and counterfeit a certain deed and instrument in writing in words and figures following, to-wit: DEED Elizabeth Hunt hereinafter called the grantor hereby grants to Elizabeth Cline herein called the grantee, all of that real property situated in the City of Richmond, County of Contra Costa, State of California, described as follows: All of lot numbered Four (4) in Block numbered Twenty-six (26); and all of lots numbered one (1), two (2), and three (3), in block numbered Twenty-six (26) . . . which said deed and instrument in writing after such making, altering, forging and counterfeiting was in words and figures following, to-wit: DEED Elizabeth Hunt hereinafter called

the grantor hereby Grant to Alfred L. Cline herein called the grantee, all that real property situated in the City of Richmond, County of Contra Costa, State of California . . . and did then and there utter, publish, pass and attempt to pass the said deed and instrument in writing as true and genuine, knowing the same to be false, altered, forged and counterfeited, with intent to prejudice, damage and defraud said Elizabeth Cline, Walter Graf, and Title Insurance and Guaranty Company, a corporation contrary to the form, force and effect of the Statutes in such case made and provided, and against the dignity of the People of the State of California.''

The prosecution introduced evidence establishing that August 24, 1943, the defendant appeared before the notary public who notarized a deed which was executed by Elizabeth Hunt to Elizabeth Cline concerning lots one, two, three, and four of Block Twenty-six in Contra Costa County. Following the entry as to said deed, the notary public's records contained this notation: ''Mr. Cline, 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.'' When the defendant was apprehended he had in his possession a Social Security card bearing the numbers 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 and the name Alfred Leonard Cline. That same day a withdrawal for $565.55 was made from account 55739 held by Elizabeth Hunt Lewis with the Farmers and Merchants Savings Bank. Two days later said account was closed with a cashier's check for $2,000 to the order of A. L. Cline. When the defendant was apprehended, a dictionary bearing the name Elizabeth Hunt, a paper showing the names and addresses of relatives of Mrs. Elizabeth Hunt Lewis, and a promissory note to the order of A. L. Cline for $4,000, signed ''Mrs. Elizabeth Lewis,'' dated August 15, 1943, were found in his possession.

A registration of A. L. Cline at the Hotel Windsor, Jacksonville, Florida, October 22, 1943, was identified as being in the defendant's handwriting. A document, dated November 10, 1943, requesting the cremation of the remains of ''Elizabeth Hannah Klein'' by one ''F. L. Klein'' as husband of the deceased was identified as bearing defendant's handwriting. A certificate of death bearing the same date, stated that one Elizabeth Hannah Klein died November 8, 1943, at 10 a. m., from ''Dilation of the heart, due to Hyperthropy of Heart,'' and was cremated at the Southern Crematorium, Jacksonville, Florida, November 10, 1943. The certificate bears the signature of S. A. Kyle as director of the crematorium. Upon

defendant's apprehension a notebook was taken from him which contained the following notation: "S. A. Kyle, 17 W. Union. Southern Crematorium, 323 Riverside Ave, Oak Lawn Cemetery."

Two years later, November 9, 1945, defendant sent Walter Graf of the Title Insurance & Guaranty Company a deed covering all of lots numbered one, two, three and four in block numbered twenty-six in the city of Richmond, county of Contra Costa, bearing the typewritten name of Elizabeth Hunt as grantor and the typewritten name of Alfred L. Cline as grantee. An expert testified that the words "Elizabeth Hunt" and "Elizabeth Cline" had been written in pencil on the document in the areas where the words "Elizabeth Hunt" and "Alfred L. Cline" were typewritten, but that the penciled writings were subsequently erased. An infra-red photography process picked up graphite from the pencil as well as "red rubber like particles deposited by a pencil erasure."

In addition to being instructed as to the provisions of section 470 of the Penal Code, the jury was specifically told that an "essential element of the crime of forgery is the false making or signing of another's name without authority. The burden of establishing want of authority is upon the prosecution." The jury returned a verdict of guilty on the count now under consideration.

■ On appeal, defendant contends that the conviction on the first count cannot stand as there is no evidence tending to establish that defendant was not authorized to alter the deed. He points out that no evidence was offered to connect the deceased Elizabeth Hannah Kline with the Elizabeth Cline mentioned in the deed, nor was any evidence offered as to the date of the alteration of the deed. Defendant, however, overlooks the rule stated in *People* v. *Smith*, 103 Cal. 563, 566 [37 P. 516]: "The possession of an instrument recently forged, by one claiming under it, like the possession of goods recently stolen, is evidence against the possessor." ■ Furthermore, the jury was entitled to take into consideration the fact that the defendant did not take the witness stand. As said in *People* v. *Caldwell*, 55 Cal.App.2d 238, 251-252 [130 P.2d 495]: "This case is of the type in which the rule of convenience might properly be applied. While the information accused appellant of a forgery necessitating proof that he did

not have the authority . . . to affix the . . . name to the certificate or to the indorsement upon it, appellant did not take the stand to throw any light upon that subject. Under the circumstances . . . appellant should have assumed some of the responsibility of defeating the accusation rather than of maintaining the attitude of expecting the prosecution to fail in its proof. . . . His proof of possession of any such authority would instantly have dispelled the web that entangled him, and if such proof existed it lay peculiarly within his knowledge," citing *People* v. *Agnew*, 16 Cal.2d 655-663 [107 P.2d 601] ; *People* v. *Terrill*, 133 Cal. 120 [65 P. 303].

Recognition of the rule of convenience does not deprive defendant of the presumption of innocence. The Supreme Court in *People* v. *Osaki*, 209 Cal. 169, 186 [286 P. 1025], stated: "It is consistent with all the constitutional protections of accused men to throw on them the burden of proving facts peculiarly within their knowledge and hidden from discovery by the government. (4 Wigmore, Evidence, sec. 2486.)" In *People* v. *Agnew, supra*, the defendant argued that there cannot be two conflicting presumptions in a criminal case and that the presumption of innocence outweighs all other presumptions, citing *People* v. *Strassman*, 112 Cal. 683 [45 P. 3], relied upon by defendant herein. At page 662, the court stated that the effect of the language in the Strassman opinion "is clearly nullified by the decision in *People* v. *Le Doux*, 155 Cal. 535, the court saying at page 553 [102 P. 517], 'The instructions declare that the presumption of innocence is the only presumption allowable in a criminal case, that it is not overcome by any other presumption, but does overcome all other presumptions of whatsoever kind or nature. Such, however, is not the law. All presumptions are evidence. Conclusive presumptions (Code Civ. Proc., secs. 1961, 1962) are not overcome by the presumption of innocence, nor are many disputable presumptions so overcome.' "

The conviction on the first count must stand. "The right to draw proper inferences from the evidence is a function of the jury; and as long as its conclusions do not do violence to reason, an appellate court is not permitted to substitute its finding of the ultimate fact for that reached by the constitutional as well as the statutory arbiter thereof. Circumstantial evidence may be as convincing in its force and as conclusive as the testimony of witnesses to an overt act." (*People* v. *Latona*, 2 Cal.2d 714, 725 [43 P.2d 260].)

The second count of the indictment accused defendant with the theft of the deed mentioned in the first count. It was dismissed by the trial court prior to the submission of the case to the jury. The indictment also charged defendant with two prior convictions of felonies. He admitted this charge.

Each of counts three to six respectively, charge defendant with forging an affidavit of loss to defraud Old Colony Trust Company, American Investment Securities Company, E. Delora Krebs, and the estate of E. Delora Krebs, and with uttering said instrument for the purpose of defrauding the same parties. The said affidavits of loss allege the loss of certificate Number 571 representing 25 shares of the common stock of American Investment Securities Company issued in the name of E. Delora Krebs, which was exchangeable for two shares of The Columbia Life Insurance Company and $139.38, and ask the release of the aforesaid securities and cash in lieu of that alleged to have been lost. Each of counts seven to ten respectively, alleges the forging of an indemnity bond indemnifying the American Investment Securities Company, the Old Colony Trust Company, etc., from loss should the allegedly lost certificate Number 571 be found, and charges that said forging was committed with intent to defraud the same parties mentioned in counts three to six and uttered for the same purpose.

In proving that Mrs. E. Delora Krebs neither signed the eight documents which form the basis of counts three to ten nor authorized the signing of her name, the prosecution established that Mrs. E. Delora Krebs was dead on October 18, 1944, whereas the Plan of Liquidation and Dissolution was not adopted until December 12, 1944. This proof brought to light the defendant's relationship with three women, Mrs. Alice Carpenter, Mrs. E. Delora Krebs, and Mrs. Isabel Van Natta.

February 12, 1944, Mrs. Alice Carpenter left Jacksonville, Florida, in good health. Mrs. Chase, a friend of Mrs. Carpenter, identified defendant as the man with whom Mrs. Carpenter departed. The hotel register of the Hotel Lanier of Macon, Georgia, contains a registration for February 17, 1944, of F. A. Klein of San Francisco and Mrs. Alma Carter of San Francisco. An expert identified the writing as that of the defendant. Pictures which Mrs. Chase identified as being of Mrs. Carpenter, were recognized by the hotel housekeeper as those of the lady who had died in the hotel on February 21, 1944,

and who had been accompanied by the man she identified in the courtroom as being the defendant. Mrs. Carpenter told her she was on her way to manage an apartment house. The housekeeper asked defendant why he didn't do something for Mrs. Carpenter and he replied, "She's a Christian Scientist and won't take any medicine." The death certificate revealed that "Alma Finch Carter" died of "acute endocarditis," February 21, 1944, and was cremated the same day. It was signed "F. A. Kline, St. Petersburg, Florida." After Mrs. Carpenter's death, defendant gave her clothes to the hotel housekeeper to distribute to the maids—in one of the garments she found a dry cleaner's mark with the name "Alice Carpenter."

May 26, 1944, defendant married Mrs. E. Delora Krebs in Chicago, Illinois. She was in the habit of keeping in close contact with her relatives and was a prolific letter writer. She was last seen by her relatives in September, 1944, at which time she was in good health. After October the family received numerous letters purportedly written for her by defendant post marked somewhere in the West. They stated that she was not well as a result of the long trip West by car, but since she and defendant believed in Christian Science they did not choose to discuss the matter; defendant asked the family to communicate by writing to Box 1532, Columbus, Ohio; the letters reveal a gradual deterioration in her health.

Mr. Gerald W. Christian, a funeral director employed by Sparkman Brand, Inc., a crematorium in Dallas, Texas, testified that on October 17, 1944, he met a man whom he identified as being the defendant. The latter asked him to cremate the body of a Mrs. Carpenter for whom he was business manager. The death certificate, which was signed "Fred Cline," showed that the death of a Mrs. Carpenter occurred in Dallas, Texas, October 18, 1944, from "coronary occlusion." The picture identified by Mrs. Chase as being that of Alice Carpenter was shown to Mr. Christian who testified that the woman he had embalmed was not the one appearing in that picture. He testified that a picture identified as being that of Mrs. E. Delora Krebs was a picture of the woman he had prepared for cremation. A package containing the personal effects of Mrs. E. Delora Krebs was mailed at Dallas, Texas, October 19, 1944.

The prosecution introduced evidence of defendant's purpose in concealing the death of E. Delora Krebs, and pretend-

ing that she was alive. She was the recipient of an annuity which did not expire until November 15, 1945, and which paid $500 a month. November 29, 1945, defendant wired her relatives "Delora very sick past week. Passed on very suddenly yesterday of hemorrhage of the brain. Undecided about plans. Will wire again to-morrow. A. L. Cline, Old Heathman Hotel."

November 17, 1945, defendant and Mrs. Isabel Van Natta registered at the Mountain View Hotel, Calistoga, California. A chamber maid in the Hotel Heathman, Portland, Oregon, identified a picture of Mrs. Van Natta as being that of the woman who was registered in that hotel on or about November 25, 1945. Her description of Mrs. Van Natta's appearance corresponds with that given by Mrs. Van Natta's friends— she walked with a cane and her knuckles were large "like she had arthritis or rheumatism or something like that." The register of the Hotel Heathman showed that the defendant was there the last of November, 1945. The death certificate showed that the death of "E. Delora Cline" occurred November 29, 1945 in Portland, Oregon, and that the body was cremated November 30, 1945—the cause of death given was cerebral hemorrhage due to hypertension.

The attorney of Mrs. E. Delora Krebs, Mr. Gerald Ryan, received the following letter from defendant: "February 28, 1945. Dear Mr. Ryan: I am mailing you under separate cover the papers requested. I hope you will find them entirely in order. I note they want to give Mrs. Cline $139.38 in cash and two shares of the Columbia Life Insurance Company. Ask them to pay it all in cash to her, for we do not want to bother with just two shares of stock in any company. If we are forced to take the two shares, ask them to make the certificate to Alfred L. Cline, which will make it a little simpler to transfer for I will sure trade it off or sell it— Write us at Columbus, Box 1532, and we will get it in due time . . . A. L. Cline." "The papers requested" were the affidavits of loss and indemnity bonds which constitute the basis of counts three to ten. These were also received by Ryan. Each of these documents were signed "E. Delora Cline formerly E. Delora Krebs" and each of them contained an original acknowledgment. Expert witnesses testified that the signatures were traced and that the word "formerly" was in the defendant's handwriting.

Defendant contends that the trial court erred in (1) permitting him to be tried for forgery on counts three to ten inclusive as separate crimes; (2) in instructing the jury "that the false making or forging of two or more separate instruments all done at the same time and as a part of the same transaction constitutes separate and distinct offenses of forgery. . . . The making or forging of a number of forged instruments constitutes as many crimes as there are forged instruments, each forged instrument being the product of a separate crime"; (3) in accepting separate verdicts on each of said counts; and (4) in pronouncing judgment upon the defendant on each of said counts as a separate offense.

██ Whether the forgery of several documents at one time in the course of one transaction constitutes only one crime or as many crimes as there are instruments, was considered in *People* v. *Gayle,* 202 Cal. 159 [259 P. 750]. There the defendant was a real estate salesman in Los Angeles, California, and was attempting to sell property owned or controlled by the Clear Lake Beach Company. He handed to said company three purported contracts of sale of lots in its subdivision, each contract being accompanied by a check of the supposed purchaser for the first payment upon the land. Defendant was tried and convicted upon six counts charging, separately, forging of the three different checks and their corresponding contracts. On appeal he contended that each check was connected with a contract and the two were one inseparable transaction; hence that he could only be charged with three offenses and not with six. The Supreme Court ruled at pages 162-163, "the false making and forging of two separate instruments, although done at the same time, are separate and distinct offenses," citing *People* v. *Ryan,* 74 Cal.App. 125 [239 P. 419]. The opinion then continues (page 163): "No question was raised at the time of the return of the verdict as to its form or sufficiency in not indicating which of the acts charged as forgery had been committed by defendant with reference to each of the instruments. Had such an objection been made, the court, probably, would have returned the verdict to the jury and directed a reconsideration of it, as provided by section 1161 of the Penal Code." In the present case, the request noted in the Gayle case, was not presented at the time of the return of the verdict, and no objection was made to the recordation of the verdict. (Pen. Code, § 1161.)

During the presentation of the prosecution's case, defendant vigorously raised the question as to whether the eight documents constituted one crime or eight crimes. The trial court instructed the jury adversely to defendant's contention. In so doing, full effect was given to the rule laid down in the Gayle case.

The precise question here involved has received little attention either in reported cases or in treatises. The most comprehensive treatment of the subject is found in 61 Lawyers Reports Annotated 819, wherein, at page 822, it is said: "The forgery of several instruments at the same time is regarded generally as the commission of a separate offense for each instrument." (Quoted with approval in *People* v. *Ryan, supra,* 130.) Language in opinions to this effect is frequently merely dicta as is the case in *State* v. *Moore,* 86 Minn. 422, 424 [90 N.W. 787, 61 L.R.A. 819]. Often a trial for the forgery of several instruments will culminate in a conviction on several counts of forgery without the question of the separateness of the offenses ever being raised, although the propriety of the indictment or information may be questioned. (*United States* v. *Lawrence,* 13 Blatchf. 211, 26 Fed.Cas. 878; *Towles* v. *United States,* 19 App.D.C. 471; *Rex* v. *Thomas,* 2 East Pleas of the Crown 934 (Pa.); *Van Sickle* v. *People,* 29 Mich. 61.)

In *Barton* v. *State,* 23 Wis. 587, the defendant forged five separate drafts. The court held that the forging of each draft was a distinct and separate offense by itself, stating at pages 589-590, that "The fact that the five drafts were each for the same amount, and upon the same sheet of paper, is entirely immaterial. They were five distinct and separate forgeries." The theory of the court appears to be that evidence showing that the defendant forged one of these drafts, would not prove that he forged the others.

The indictment in *United States* v. *Carpenter,* 151 F. 214 [81 C.C.A. 194, 9 L.R.A.N.S. 1043, 10 Ann.Cas. 509], contained four counts. The first count charged the alteration of a money order on November 28, 1903; the second count charged the utterance of that order; the third count charged the alteration of another money order on the same day; and the fourth count charged its utterance. The appellate court held that the forging and uttering of a forged instrument constituted one crime, but that the first and third counts charged separate offenses, citing the Barton case and 19 Cyclopedia of Law and Procedure, page 1411.

In view of the foregoing authorities and the position taken by the Supreme Court in *People* v. *Gayle, supra,* the ruling of the trial court must be sustained. None of the authorities cited by the defendant require a holding that counts three to ten charge only one crime. They support the proposition that the forging and uttering of one instrument constitute but one offense (*People* v. *Frank,* 28 Cal. 507, 513), and the proposition that only one offense is charged in an indictment which alleges that various acts of forgery took place on one instrument. (*People* v. *Dole,* 122 Cal. 486 [55 P. 581, 68 Am. St.Rep. 50] ; see, also, *Rosekrans* v. *People,* 3 Hun (N.Y.) 287, 5 Thomp. & C. 467; *People* v. *Wright,* 9 Wend. (N.Y.) 193.) Defendant quotes from *People* v. *Adams,* 79 Cal.App. 373, 375-376 [249 P. 536], which relates to a pleading problem as to what instruments the defendant therein was accused of forging. Such language is not in point.

■ Defendant also challenges the sufficiency of each of the instruments which constitute the basis of counts three to ten, citing *People* v. *Tomlinson,* 35 Cal. 503, 506. The dicta of the Tomlinson case was expressly overruled in *People* v. *Munroe,* 100 Cal. 664, 666 [35 P. 326, 38 Am.St.Rep. 323, 24 L.R.A. 33] : ''There is some general language in the Tomlinson case, taken every probably from *People* v. *Shall,* 9 Cow. 784, to the effect that the writing, if genuine, must be sufficient to form the basis of a legal liability; but such is not the true test, in our opinion. The requirements of the statute demand no such construction, and its adoption would result in the escape from justice of many criminals.'' (See, also, *People* v. *McKenna,* 11 Cal.2d 327, 332 [79 P.2d 1065].)

■ Defendant was not prejudiced by the conduct of the trial court ordering that the sentence pronounced on counts three to ten run consecutively.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied April 26, 1947, and appellant's petition for a hearing by the Supreme Court was denied May 8, 1947.