[Crim. No. 2502. First Dist., Div. One. Apr. 21, 1948.]

THE PEOPLE, Respondent, v. VERN STODDARD,
Appellant.

Lawrence A. Cowen for Appellant.

Fred N. Howser, Attorney General, and Benjamin B. Knight, Deputy Attorney General, for Respondent.

WARD, J.—This is an appeal from a judgment of conviction entitled "Forgery of Endorsement" with three prior convictions attached to the information, and from an order denying a motion for a new trial.

The body of the information alleges forgery in the usual language of the Penal Code, section 470, with the added allegation that the instrument was a " 'B of A' Travelers Cheque No. A1699036," which would be paid when countersigned "Frank S. Moss" in an appropriate space at the bottom. Defendant entered a plea of not guilty and not guilty by reason of insanity. The plea of insanity was withdrawn after the rendition of the verdict. He admitted two of the prior convictions, but denied the third, which charged the offense of highway robbery while armed. On the day of trial the information was read, including the prior which had been denied by defendant. Upon amendment of the third prior to the charge of robbery (in Michigan), during the progress of the trial defendant admitted the third prior.

Defendant claims the judgment is erroneously prejudicial for the following reasons: " (1) That the evidence is insufficient as a matter of law to support the verdict and Judgment. (2) That the Court erred in permitting the prosecution to offer evidence of other offenses. (3) That the jury violated its instructions in rendering a verdict of guilty. (4) That the amendment of the information over objections by appellant was erroneous and prejudicial."

The facts appear as follows: Clifford Marshall, owner of a hotel in Marin County identified defendant as having been present with several other persons at the hotel on the date alleged in the information as the date of the commission of the offense. Marshall testified: "Why, he and two or three other gentlemen and a lady came to my place. One of the men, I had seen two or three times before, the preceding summer. He couldn't—he came in and called me by name and introduced me to two or three of the others. I don't remember whether he introduced me to Mr. Stoddard or not at the time, but he said these are my friends, and then all ordered a drink. While I was making the drinks, they wanted to know if I would cash a travelers' check for them. I believe they just said a check. I told them I wasn't in the habit of cashing checks. They said they needed a few dollars, they didn't have quite enough to go to Willits. They said they were going there. After I—during that time I told them I—if it was all right. Well, while I was mixing the drinks he had the check in front there. I could see it was a travelers' check, and he went through the process of signing the check. I watched him from off at a distance of about 4 or 5 feet. When I got

through I was shown a $50 check, and I said I didn't have that much money, I would be short in change for over the week-end. He said they only needed part of it, but they wanted $30. I cut it down, and said I would let them have 15 and the rest when they came back either Sunday or Monday, and they came back on Monday. . . . When they came in there was only two of the fellows, Mr. Stoddard, one of the other fellows, and the lady, and they wanted to get the rest of the money, the $35 and I told them I had the money but it was back in my apartment and I would have to go and get it and they stayed in the bar and I went back and I called the officers and they picked up Mr. Stoddard and the others at that time." In response to the interrogation "Which Frank S. Moss did you see the defendant place upon the paper?" Marshall replied "The one on the bottom. Q. The one on the bottom? A. Yes . . . I actually saw him take the pen and apply it to the check. Whether he wrote Moss or what he wrote or whether he just went through the motions or not, I don't know, but he did apply the pen to the check." In answer to the question "Why did you pay the $15.00 if you were suspicious about it?" Marshall replied: "Because it was worth $15.00 to me to catch him for a check [No. A1699040] passed a year before."

An officer of the bank testified that he did not know of his own knowledge whether Frank S. Moss actually lost the checks, which were of the same series, but their loss had been reported to the bank; that the records of the bank showed Frank S. Moss as the owner of the series. The officer of the bank also testified that he knew Frank S. Moss and that the defendant was not such person, and that the report of the loss had been made to the bank "by Frank S. Moss in person." In addition, a witness for the People on cross-examination gave certain hearsay testimony without motion to strike the testimony from the record: "Q. Did anybody talk to you about it? A. Yes, when the check—when payment was stopped on the check, I came up to the police department and a fellow at the desk told me that the checks were stolen from someone in San Francisco. Q. Did you ever discuss this—your answer is yes."

█ Before proceeding further with the narration of the evidence, it may be well to discuss briefly the subject of corpus delicti. The purpose of proof of the corpus delicti is to insure the rights of a defendant against a conviction unless a crime has actually been committed and evidence thereof presented.

It is not necessary that each essential of the corpus delicti should be conclusively proved if the essentials taken together are convincing to a moral certainty and beyond a reasonable doubt of the commission of the crime. ■ In proving the offense of forgery, lack of authority to utter, publish or pass an instrument is one of the essentials of proof of the crime. (*People* v. *Whiteman*, 114 Cal. 338 [46 P. 99].) It may be proven by evidence of the owner or maker of the instrument that authority to perform the particular act alleged as an offense was lacking. In the absence of such witness, lack of authorization may be proven circumstantially. (*People* v. *Cline*, 79 Cal.App.2d 11 [179 P.2d 89].) ■ Here, a comparison by the jury of the genuine signature of Frank S. Moss on the face of the check, with the name "Frank S. Moss" written on or near the bottom of the check, plus evidence that Moss in person had stopped payment on the check, are circumstances that may be considered. From this evidence it reasonably may be inferred that Moss did not authorize anyone to sign his name to the check. "For the purpose of introducing statements of the defendant, the prosecution is not required to establish the corpus delicti by evidence of a clear and convincing character such as is required to support a conviction." (4 Cal.Jur., 10-Yr.Supp. (1943 Rev.) § 303, p. 746.)

Defendant cites *People* v. *Maioli*, 135 Cal.App. 205 [26 P.2d 871], where a judgment of conviction of forgery was reversed on the ground that the prosecution failed to show that the defendant had no authority to issue the checks at the time of their utterance. The defendant had previously issued similar checks signed in the name of a business conducted by defendant's brothers. Members of the family had paid the amounts involved in the prior forgeries. Defendant in that case testified: "I knew my folks were going to make it good." (P. 207.) There was no evidence to the contrary. The appellate court held it could not uphold a conviction on conjecture and suspicion. There is no question of conjecture or suspicion in the present case as the guilt of the defendant is demonstrated to a moral certainty and beyond a reasonable doubt.

On the second day after the passing of the traveler's check defendant returned to obtain the balance of the money. He was promptly arrested and made a voluntary statement to the chief of police, who was subsequently called as a witness and testified: "We showed him this check and asked him if he signed Frank S. Moss and he said he did. He stated that he

was over in a bar on Franklin Street and there was a man sitting at the bar in an intoxicated condition and these checks— or the checks had slipped out of his pocket onto the bar. Mr. Haley [assistant district attorney] : Out of whose pocket? A. Out of the man's pocket who was laying over the bar. Q. At a tavern in San Francisco? A. Yes. Q. Did the defendant in this conversation say when this incident in the bar in San Francisco took place? A. You mean—— Q. When was the person leaning over the bar in San Francisco that you are talking about? A. Around July of 1946. Q. Around July of 1946? A. Yes. Q. Proceed, please. A. He said the checks had slipped out of his pocket onto the bar and that he, Stoddard, and the bartender put them back into his pocket, and that they kept slipping out and that finally he took the checks and stuck them in his pocket and the man was laying over the bar in a sort of an unconscious, I guess he was—just laying over the bar like he was asleep. Q. When you testified that he took them and put them in his pocket, who are you referring to? Who said that? A. Mr. Stoddard. Q. The defendant said that he took the package of checks and put them in his pocket? A. In the pocket of—in the pocket of the man laying over the bar, then they slipped out of his pocket again and Mr. Stoddard took it and put it in his, in Mr. Stoddard's pocket. Q. Kept them himself? A. That's right. Q. What if anything did you ask him or what did he say concerning the passing of the check, the writing of the check and the passing of the check at the Bayview Hotel on April 19 this year? A. I asked him if he had signed that and passed the check at the Bayview Bar and he said yes, he had. Q. Did you ask him what name he had signed? A. Yes. During the conversation I asked him if he signed the name Frank S. Moss and he said yes.''

 Evidence to show guilty knowledge and intent was introduced that approximately 12 months previously defendant had signed the name ''Frank S. Moss'' to another traveler's check of the same series (No. 1699040) and passed it on a bartender in Marshall's establishment. The defendant likewise admitted signing the name of Frank S. Moss to this check, passing it to the bartender and receiving $50. The testimony of the chief of police was corroborated by another person present during the conversation. Defendant's objection to this point is based upon the claim that the evidence of the forgery of the 1946 check was not admissible unless the corpus delicti of the passing of the check in 1946 was proven to a moral certainty and beyond a reasonable doubt. (*People* v.

*Whiteman, supra.*) As this point has been previously discussed it is not necessary to make lengthy reference to the subject. The prosecution proved that both checks were forged. ■ The jury has the right to draw inferences from circumstantial evidence. Unless such inferences do violence to reason an appellate tribunal is not permitted to interfere. (*People* v. *Latona,* 2 Cal.2d 714 [43 P.2d 260] ; *People* v. *Cline, supra.*) ■ The fact that Moss stopped payment on both checks, and that defendant admitted that he stole them, does not do violence to the conclusion that the endorsement on each check was false and that defendant lacked authority to sign either of them.

Defendant urges that the court instructed as the law is enunciated in *People* v. *Whiteman, supra,* and that the jury failed to be governed by such instructions. The verdict indicates an implied finding that defendant lacked the authority to sign the name "Frank S. Moss." The real question to consider in this case is not whether the jury violated the court's instructions, but rather the question of the sufficiency of the evidence to sustain the verdict. In this respect the evidence is convincing beyond a reasonable doubt.

As previously noted the information referred to the offense which resulted in the third prior conviction as "highway robbery while armed." The defendant denied this prior and accordingly the third prior was read to the jury, which required proof on the part of the People. In the opening statement the district attorney outlined in detailed form the evidence which the People expected to introduce. Included in this statement was the proposed offer to prove that defendant had served a term of imprisonment as set forth in the third prior. During the trial of the present offense, outside the presence of the jury, the correctness of the conviction set forth in the third prior was challenged. No proof of the Michigan statute was made in this case. However, Michigan, like California, recognizes the distinction between armed and unarmed robbery. (Mich. Stats., 28.797, 28.798, Mich. Pen. Code, 529, 530; Cal. Pen. Code, § 211a.) The court permitted the district attorney to amend the prior so that it charged "robbery," without reference to "highway" or "while armed." The defendant then admitted the third prior.

Previous to the return of the jury the following transpired : "THE COURT: Have you any thoughts to express, Mr. Cowan? MR. COWAN [attorney for defendant] : No, your Honor. I

am going to leave this entirely in your Honor's hands and I think your Honor can fairly present to the jury the fact that this man was erroneously charged with having committed the crime of highway robbery while armed and that that charge is withdrawn and they are no longer to take it into consideration. MR. HALEY: I would suggest you add an admonition that they disregard not only any evidence—there has been none offered—but any reference be completely disregarded." The court instructed the jury: "Ladies and gentlemen, it is necessary for the court to inform you now that the information heretofore read to you has been amended and it will now under this amended information be your duty to disregard anything that has been said in the prior information concerning the previous conviction of this defendant. I want you to eliminate entirely from your consideration and your deliberations any reference to that charge which was heretofore read to you and about which you have been questioned when you were on your voir dire, and perhaps have heard mentioned during the trial. You will entirely eliminate all consideration of this conviction from your minds and we will proceed to trial when we do proceed on the main charge and which now is the only charge to be made, namely the charge of forgery."

On appeal defendant claims that he was materially prejudiced by being originally charged with a prior conviction which could not be proved, and that the information was amended to set forth an offense that could be proved. The reference to the unproven prior in the district attorney's opening statement is the basis of the claimed prejudicial error.

■ An information may be amended, in the discretion of the court, at any stage of the proceedings after a defendant pleads. (Pen. Code, § 1008.) ■ A prior conviction is not a part of the offense charged but is added to the information for the purpose of the ascertainment of proper punishment in the event of a conviction of the offense alleged in the information. Whenever an information does not charge all prior felonies, the information or indictment may be amended on order of the court. (Pen. Code, § 969a.) ■ If the defendant admits a prior no reference may be made thereto in reading the accusation of the offense charged—in this case forgery. If the defendant denies the prior, it is proper to introduce the necessary data so that the jury may find the prior conviction true or not true. (Pen. Code, § 1158.) ■ When the truth or falsity of the prior becomes an issue, the amendment thereof, after "denial," is likewise a matter of discretion with

the trial court. No abuse of discretion may be based upon the amendment in this case, but the circumstances surrounding the order of amendment may give rise to a charge of prejudice. In the present case there was no language used by the district attorney in his opening statement or during the trial that appears to have been used with the purpose of prejudicing the defendant. The trial court correctly admonished the jury to entirely eliminate from their minds all consideration of the alleged conviction. ▮ If the defendant had been sworn as a witness he could have been interrogated upon the conviction as a matter of testing his credibility. (Code Civ. Proc., § 2051.) This procedure would have negatived possible error in reference to the prior conviction during the trial. (*People* v. *Peete*, 28 Cal.2d 306 [169 P.2d 924].) ▮ If the amendment had not been allowed and the district attorney had failed to sufficiently prove the prior, or if the district attorney had offered no evidence to prove the prior and the jury had returned a finding that the third prior was not true, no prejudice could have been claimed. (*People* v. *Berry,* 119 Cal.App. 574 [6 P.2d 969].) There is nothing in the record indicating that defendant was prejudiced by the incident.

*People* v. *Colombo,* 70 Cal.App. 489 [233 P. 413] is called to the court's attention by defendant. In that case a prior conviction charge was amended but after evidence of the alleged prior conviction had been introduced. Defendant objected on the ground that the proof showed a different offense than the one charged in the information. The information was amended and as amended the prior conviction introduced in evidence. In the Colombo case the jurors knew that the defendant had been convicted upon a prior and similar charge. In the present case no evidence was introduced though the alleged prior conviction had been read to the jury. However, the jury was specifically admonished that the only charge to pass upon was forgery. The court instructed the jury to eliminate entirely from consideration any reference to the prior conviction "heretofore read to you." In *People* v. *Mock Don Yuen,* 67 Cal.App. 597, 600 [227 P. 948], the court said: "In view of the fact that the charge of the previous conviction had been read to the jury and frequently alluded to before the defendant admitted the same, the district attorney's later reference thereto in his cross-examination of defendant, which was probably inadvertent, could not have prejudiced the defendant's rights, especially after the court's admonition to the jury to disregard it."

If it could be determined that the prior conviction should not be amended under the circumstances of this case, still the alleged error in the matter of procedure has not resulted in a miscarriage of justice as is shown by an examination of the entire cause, including the evidence.

The judgment and the order denying the motion for a new trial are affirmed.

Peters, P. J., and Bray, J., concurred.