Filed 1/8/14  P. v. Tapia CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B245474 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA 391773) |
| v. | |
| PASCUAL BARRAGAN TAPIA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Terry A. Bork, Judge.  Affirmed.

Hart J. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Kenneth C. Byrne and Shira B. Seigle, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Defendant Pascual Barragan Tapia appeals from a judgment convicting him of one count of sale of a controlled substance, in violation of Health and Safety Code section 11379, subdivision (a). Defendant contends there was insufficient evidence to sustain the jury's verdict. We disagree, and affirm the judgment.

## FACTS

In April 2010, Detective Guillermo Mixer and Officers Enrique Robledo and Andrew Paredes of the Los Angeles Police Department (LAPD) began a joint task force investigation of Robert Lujano. Lujano was believed to be involved in the sale of firearms and narcotics. During the year-long investigation of Lujano, the LAPD employed a confidential informant (the informant) to engage in approximately 15 to 20 undercover narcotics purchases. Of those, at least three transactions involved the sale of methamphetamines.

On April 21, 2010, Detective Mixer set up an undercover operation that required the informant purchase two ounces of methamphetamines from Lujano. The operation was scheduled to take place on the following day.

On April 22, 2010, the informant was searched at the task force's staging area immediately before the actual operation began to protect the operation's integrity. Once the search was completed and no contraband was found on the informant, Detective Mixer gave the informant $2,000 to purchase two ounces of methamphetamines. Officer Robledo, dressed in plain clothes, drove the informant to Lujano's house. The informant was equipped with a transmitter and recording device. Officer Robledo also was equipped with a transmitter. Detective Mixer monitored the informant and Officer Robledo through their transmitters.

Upon arriving at Lujano's residence, the informant called Lujano. Lujano came out of his residence and approached Officer Robledo's vehicle. Lujano instructed the informant to follow him to another location to meet with the methamphetamine supplier. Officer Robledo and the informant followed Lujano to a Numero Uno Market parking lot.

Lujano was seen speaking to a driver of a black Honda, which was already parked in the lot. Lujano remained in his truck during his interaction with the other driver.

2

Officer Robledo did not see anything exchanged between Lujano and the driver of the black Honda.

The informant exited Officer Robledo's vehicle and entered the passenger side of Lujano's truck. When the informant asked Lujano what they were doing in the parking lot, Lujano stated they were waiting for his "uncle," who was "already on his way with it." While the two men waited for the "uncle" in Lujano's truck, the informant counted out $1,960 to purchase two ounces of methamphetamine. Shortly thereafter, a silver Dodge Nitro pulled into the parking lot and parked two stalls to the left of Lujano's truck. Lujano told the informant, "let me get it from him," exited his truck and entered the front passenger side of the Dodge Nitro. Other than Lujano, Officer Robledo was able to see that defendant was the only person in the Dodge Nitro. The informant remained in Lujano's truck.

About 10 to 15 seconds later, Lujano exited the Dodge Nitro and entered his truck. After a brief conversation between Lujano and the informant, Lujano said, "Let me, let me pay him real quick." The informant exited the truck and entered Officer Robledo's vehicle. As Officer Robledo prepared to leave the parking lot, Lujano exited his truck and reentered the Dodge Nitro.

Upon entering Officer Robledo's vehicle, the informant showed Officer Robledo two packages containing round clusters that appeared to be methamphetamine. Officer Robledo took possession of the two packages and secured them in the center console. Detective Mixer later received the packages and booked them into evidence. Once the narcotics operation was completed, the informant was searched again to ensure he did not possess any narcotics on his person. No contraband was found on the informant's person.

Suspecting defendant was involved as a "supplier" in the drug trade following the April 22, 2010 undercover operation, the LAPD began its investigation of defendant. On May 11, 2010, the LAPD conducted surveillance on defendant. An observation point was set up at defendant's residence. When defendant left his residence, the investigating officers followed. Defendant was seen driving from his home to various locations in a Dodge Nitro, the same vehicle that was observed in the Numero Uno parking lot on

3

April 22, 2010. A Department of Motor Vehicles printout based upon the license plate of the Dodge Nitro established that the car was registered to the same address as defendant's residence. On December 7, 2010, a search warrant was executed at defendant's residence. No evidence related to drugs, drug paraphernalia or drug sales was recovered.

## PROCEDURE

On June 13, 2012, an information was filed, charging defendant with one count of selling or transporting a controlled substances, in violation of Health and Safety Code section 11379, subdivision (a).

Prior to submitting the case to the jury, the prosecution and defense counsel stipulated that (1) the substance of the two packages was examined by the United States Department of Justice, Drug Enforcement Administration, and tested positive for methamphetamine; (2) there were no identifiable fingerprints found on the packages; and (3) the weight of the methamphetamine amounted to 2.06 ounces.

On October 17, 2012, a jury returned a verdict, finding defendant guilty as charged. The prosecution filed a sentencing memorandum requesting the court to sentence defendant to three years of felony probation and 15 days of community service. The trial court imposed a midterm jail sentence of three years, suspended the execution of the sentence, and granted three years of felony probation. Defendant was given credit for two actual days in custody and was ordered to perform 160 hours of community service.

## DISCUSSION

Defendant contends there was insufficient evidence at trial to support his conviction. Defendant argues "the evidence did not establish that he was the one who actually provided the methamphetamine to the informant" because the facts supported two inconsistent inferences. In essence, defendant claims Lujano could have obtained the methamphetamine from the driver of the black Honda. We disagree.

"'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence – evidence that is reasonable, credible and of solid value – such that a reasonable trier of fact could find the

4

defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence . . . . [Citation.] "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility. [Citation.]'" (*People v. Nelson* (2011) 51 Cal.4th 198, 210.) "'Circumstantial evidence may be as convincing in its force and as conclusive as the testimony of witnesses to an overt act.'" (*People v. Cline* (1947) 79 Cal.App.2d 11, 15.)

Substantial evidence supports the verdict. During the April 22, 2010 operation, Lujano told the informant his "uncle" was "already on his way with [the narcotics]." When a Dodge Nitro entered the parking lot, Lujano told the informant he would "get it from him," exited his truck and entered the Dodge Nitro. Other than Lujano, defendant was the only person in the Nitro. When Lujano returned to his truck, he told the informant he had to "pay him real quick," got out of his truck, and again, returned to the Dodge Nitro. The informant returned with two ounces of methamphetamines. Although Lujano spoke to someone in the black Honda, Lujano was seen entering and exiting only two vehicles: his own and defendant's Dodge Nitro. A reasonable jury could infer that, on April 22, 2010, Lujano waited for defendant to bring the methamphetamine to the parking lot, defendant brought the methamphetamine, and Lujano paid defendant for the methamphetamine.

Defendant's argument that the evidence is susceptible to an inference he obtained the methamphetamine from the person in the black Honda does not compel a different result. First, the argument is not persuasive because Lujano made no exchange with the person in the black Honda. (*People v. Burns* (1952) 109 Cal.App.2d 524, 534.) Second, "'the mere fact that the evidence is susceptible of two inferences, one of innocence and one of guilt[,] would not warrant a reversal of conviction.'" (*Ibid.*) Because there is substantial evidence to support the jury's finding of defendant's guilt, this court "'is

bound by the findings of the jury where it rejects the hypothesis of innocence.'" (*Ibid.*)
Therefore, defendant's conviction must stand.

## DISPOSITION

The judgment is affirmed.


FLIER, J.

WE CONCUR:


RUBIN, Acting P. J.


GRIMES, J.